HILDE FEYLER, Appellant. *v.* HENRY T. MORTIMER, Respondent.

Argued May 27, 1949; decided July 19, 1949.

*Leone Pecoraro* for appellant. I. The real party in interest is the infant, her mother, the appellant, being only the nominal party and accordingly, the nationality or alien status of the mother is neither material nor conclusive on the right of the infant to maintain the suit. (*Manila Motors Co.* v. *The Ivaran,* 46 F. Supp. 394; *Compagnie Francaise De L'Afrique Occidentale* v. *The Otho,* 57 F. Supp. 829.) II. The infant, the real party in interest, is not an alien. III. The orders appealed from are appealable. (N. Y. City Crim. Cts. Act, § 61, subd. 5.) IV. This paternity proceeding may be maintained in our courts even though complainant and her child reside outside of the country, since defendant resides in this State. (*Moore* v. *State ex rel. Vernon,* 28 P. 1072; *Matter of Zimmer,* 253 N. W. 749; *Matter of Roy* v. *Poulin,* 105 Me. 411; *Commonwealth* v. *Dornes,* 132 N. E. 363.)

*Sol A. Rosenblatt, Francis X. Mancuso, Charles Roden* and *Herman S. Rosenblatt* for respondent. I. The legitimacy statutes do not permit the maintenance of a proceeding on behalf of an alien mother and child residing in Germany against a resident putative father. The Criminal Courts Act, to the extent that it may purport to confer jurisdiction upon the court below in favor of children wherever residing in the world, is discriminatory and unconstitutional, since it conflicts with the limited jurisdiction given by the Domestic Relations Law to courts of this State outside of the city of New York, in favor of children within the United States and its territories. (N. Y. City Crim. Cts. Act, § 64, subd. 1; Domestic Relations Law, § 135; *Canajoharie* v. *Johnstown,* 17 Johns. 41; *Wynkoop* v. *Overseers of the Poor,* 3 Johns. 15; *Matter of Vincent,* 189 Misc. 489; *Matter of Doyle,* 1 Clarke Ch. 154; *Schneider* v. *Kennat,* 267 App. Div. 589; *Regina* v. *Blane* [1849], 13 Q. B. 769; *Commissioner of Public Welfare* v. *Simon,* 270 N. Y. 188; *Boissevain* v. *Boissevain,* 224 App. Div. 576, 252 N. Y. 178; *Fair* v. *Kenny,* 103 Misc. 412; *Scott* v. *Dickerson,* 169 Misc. 1047; *Aultman & Taylor Co.* v. *Syme,* 163 N. Y. 54; *Anonymous* v. *Anonymous,* 174 Misc. 906.) II. Since both the mother and child are non-resident enemy aliens and a state of war still exists between the United States and Germany, the proceeding was properly dismissed. (Blackstone. Commentaries on the Laws of Eng-

land [Sharswood's ed.], § 373, book I, ch. 10; 30 Amer. & Eng. Encyclopedia of Law [2d ed.], p. 9; *Jackson* v. *Decker,* 11 Johns. 418; *Bell* v. *Chapman,* 10 Johns. 183; *Groupment Financier Liegois* v. *Cutten,* 178 Misc. 275; *The Julia,* 8 Cranch [U. S.] 178; *Drewry, S. A. R. L.* v. *Onassis,* 266 App. Div. 292, 291 N. Y. 779; *Rothbarth* v. *Herzfeld,* 179 App. Div. 865, 223 N. Y. 578; *Arndt-Ober* v. *Metropolitan Opera Co.,* 182 App. Div. 513; *Hungarian General Creditbank* v. *Titus,* 182 App. Div. 826; *Ludecke* v. *Watkins,* 335 U. S. 160; *United States ex rel. Schlueter* v. *Watkin,* 67 F. Supp. 556, 158 F. 2d 853; *Montgomery* v. *United States,* 15 Wall. [U. S.] 395.) III. The order is not appealable and, therefore, this appeal should be dismissed. (*Matter of Restivo* v. *Degnan,* 191 Misc. 642; *Commissioner of Public Welfare* v. *Simon,* 270 N. Y. 188; *People* v. *Gersewitz,* 294 N. Y. 163, 326 U. S. 687; *Matter of Clausi,* 296 N. Y. 354; *People ex rel. Bd. of Police* v. *Shulman,* 8 App. Div. 514; *People* v. *Reed,* 276 N. Y. 5.)

FULD, J. In May of 1946, Miss Hilde Feyler, a national and resident of Germany, gave birth to a child. Nearly two years later, while still in Germany, she filed a paternity proceeding complaint in the Court of Special Sessions of New York City, charging the defendant, a resident of New York County, with having fathered her child while he served in Germany as an officer in the United States occupation forces. Upon defendant's challenge to the court's jurisdiction, the trial justice quashed the summons, which he had previously issued, and dismissed the proceeding. The Appellate Division unanimously affirmed and the matter is now properly before us, by permission of the Presiding Justice of that court, as an appeal from a final order in a criminal proceeding. (See *Matter of Clausi,* 296 N. Y. 354; *Matter of Buckman,* 296 N. Y. 915; *Commissioner of Public Welfare* v. *Simon,* 270 N. Y. 188; see, also, *People* v. *Hatzis,* 297 N. Y. 163.)

We agree with the determination that has been made. The courts of this State lack jurisdiction to entertain a filiation proceeding if the mother and child reside in a foreign country.

At the common law, the father of an illegitimate child was not liable for the support of either the child or the mother. (See, e.g., *People ex rel. Lawton* v. *Snell,* 216 N. Y. 527, 532; *Schneider* v. *Kennat,* 267 App. Div. 589.) Not until the last century did legislation begin to reflect the passing of the ancient hostility toward the illegitimate child and it was not until then that the Legislature began to moderate the common-law strictures against filiation proceedings. Decision herein depends upon how far the statutory reforms have gone. There is no doubt that, at the start, the legislative changes were inspired by a purpose to lift the burden of supporting fatherless children from the communities in which they lived. Consonant with that design, a filiation action was maintainable only in the county, city, or town where the child was born, and it was immaterial, for jurisdictional purposes, where the putative father lived. (See *Keller* v. *Cleary,* 62 App. Div. 609, adopting opinion of INGRAHAM, J., dissenting in 56 App. Div. 466, 468.)

By 1925, the attitude toward illegitimacy had altered considerably, and the Legislature in that year recognized, by enacting section 135 of the Domestic Relations Law (L. 1925, ch. 255), that there was a moral responsibility as well as an economic obligation to be enforced against the father. As its title, its location and its content make manifest, that section is controlling in all suits involving paternity proceedings and defines the jurisdiction of every court hearing such matters. Thus, section 135 is entitled " Jurisdiction ", is found in the article relating to " Proceedings to Establish Paternity " (Art. VIII), and reads in this way: " Jurisdiction over proceedings to compel support is vested in the courts enumerated in section one hundred and twenty-two, paragraph three. It is not a bar to the jurisdiction of the court that the complaining mother or child resides *in another county or state,* if the defendant be a resident of this state." (Emphasis supplied.)

As is readily perceivable, the Legislature did not render the residence of the mother and child entirely immaterial and inconsequential. On the contrary, by providing that the residence of the mother and child " in another  *  *  *  state " is no bar if the father lives in " this state ", the Legislature made it plain that no paternity suit could be brought if the former, that is, the mother and child, resided elsewhere than in this State or in " another  *  *  *  state ".

Our problem then becomes an exceedingly narrow one: is a foreign country — Germany, in this case — "another * * * state" within the sense and context of section 135? If the question were one of bare dictionary meaning, the answer might well be in the affirmative. But it is not, for the statute has, as often occurs, here supplied its own lexicon. By coupling the phrase "another * * * state" with the words "this state", the Legislature has demonstrated that the word "state" refers only to other States of the United States, which may perhaps include its territories and possessions. If a broader meaning had been contemplated, "the statute * * * would have included language such as 'a foreign country' or 'any other jurisdiction' or words of similar import." (*Boissevain* v. *Boissevain*, 252 N. Y. 178, 181–182.)

The legislative derivation of section 135 points the same conclusion. Taken almost verbatim from the Uniform Illegitimacy Act, a statute concerned exclusively with the problem of filiation and support in the various States of the Union, it carries with it the connotations of its origin, and refers only to subdivisions of this country. In short, section 135 of the Domestic Relations Law requires that the complaining mother be a resident of the United States, and, in our opinion, that requirement is a jurisdictional limitation upon any court petitioned to hear the paternity proceeding.

To support her contention that courts of special sessions may try a filiation suit if the putative father is a resident of New York City regardless of the residence of the mother and child, complainant points to section 64 of the New York City Criminal Courts Act (L. 1910, ch. 659, as amd. by L. 1930, ch. 434, and as renumd. by L. 1933, ch. 746), the statute which sets up the inferior criminal courts in the city. Section 64 — and it has its counterpart in the Domestic Relations Law (§ 122) — seems at first blush to sustain that argument, for it reads: "Proceedings may be instituted if the mother or child resides or is found in the city of New York, or if the putative father resides or is found in the city of New York. The fact that the child was born outside of the state of New York shall not be a bar to instituting proceedings against the putative father in the city of New York if he resides or is found therein, or if the mother resides or the child is found therein."

If the Legislature had said nothing more on the subject, if there were no section 135 of the Domestic Relations Law, we would have no hesitancy in permitting action by a mother living in Germany where, as here, the putative father resides in New York City. We may not, however, close our eyes to the provisions of the latter statute. Even if we found in section 64 evidence of a legislative design to create, insofar as the courts in New York City are concerned, an exception to the jurisdictional prerequisites demanded by section 135 of the Domestic Relations Law, the Constitution of this State would probably intervene to stamp such a construction as invalid. The courts which hear paternity proceedings outside of New York City are, as we interpret section 135, restricted to suits brought by a mother who resides in this country. To confer upon the Court of Special Sessions which operates only in New York City the more extensive power of hearing complaints by mothers resident in foreign countries would erect an anomalous, an illogical and, perhaps, an unconstitutional distinction in their favor. (See, e.g., *Commissioner of Public Welfare* v. *Ladutko,* 256 App. Div. 775, affd. on other grounds 281 N. Y. 655; *Commissioner of Public Welfare* v. *Torres,* 263 App. Div. 19.) We avoid such a course when we may.

The order of the Appellate Division should be affirmed, without costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and BROMLEY, JJ., concur.

Order affirmed.