MARLIESE F. DUERR, Appellant, v. AUGUST WITTMANN, Respondent.

First Department, March 11, 1958.

*William I. Friedman* of counsel (*Jerry G. H. Lissner*, attorney), for appellant.

*David Goldman* for respondent.

BOTEIN, P. J. This is an appeal from an order of the Court of Special Sessions, New York County, which granted defendant's motion to dismiss the complaint in a paternity proceeding, upon the ground that the action was not timely commenced.

Complainant is a national of Germany. While residing in Connecticut, she had relations with defendant, a resident of the city of New York, which resulted in her becoming pregnant. She returned temporarily to Germany, where she gave birth to a child on April 12, 1954.

Leaving the child in Germany in the custody of her parents, she returned to the United States and resumed her former position in Connecticut. In March, 1956 complainant decided to seek other employment, and came to New York City, where she rented a room and took a secretarial job. A week before her child's second birthday, on April 4, 1956, she filed a complaint in the Court of Special Sessions alleging that she was a resident

of New York, that she had given birth to a male child on April 12, 1954, and that defendant, a resident of Brooklyn, was the father of the child.

Subdivision 3 of section 64 of the New York City Criminal Courts Act, which sets forth the procedure to be followed in paternity cases in the city of New York, provides that upon the filing of the complaint, "The court shall thereupon issue a warrant for the apprehension of the defendant, directed to any peace officer in the state, and such warrant may be executed in any part of the state. However, a summons instead of a warrant may be issued in the discretion of the court. Such summons shall be in such form as the court may determine and shall be personally served as directed by the court."

Upon the filing of the complaint by complainant, the court directed the issuance of a summons. The summons could not be served, however, and on May 25, 1956, more than two years after the birth of the child, a bench warrant was issued for defendant's arrest. He thereupon appeared voluntarily, denied the charges in the complaint, and subsequently moved to dismiss the complaint.

Subdivision 1 of section 64 of the New York City Criminal Courts Act bars paternity proceedings by the mother which are not brought within two years from the birth of the child, unless paternity has been acknowledged by the father. Complainant's position is that the proceedings were timely commenced by the filing of a complaint and the issuance of a summons on April 4, 1956. Defendant's contention, with which the court below agreed, was that the proceedings were not effectively commenced until the issuance of the warrant.

A civil action is commenced by the service of a summons (Civ. Prac. Act, § 218). A criminal prosecution is commenced by the issuance of a warrant of arrest upon an information, or upon the filing of an indictment (Code Crim. Pro., § 144). The court below reasoned that since a filiation proceeding is criminal in character, section 144 of the code necessarily applies; and hence this action was not commenced until the issuance of a warrant more than two years after the birth of complainant's child.

Section 144, by its terms, is specifically limited to "a prosecution" under the code. Prosecutions are criminal actions brought by the People of the State of New York, as plaintiff, against a party charged with a crime, for the purpose of imposing punishment (Code Crim. Pro., §§ 5, 6). A crime is defined in section 2 of the Penal Law as an act or omission forbidden by law and punishable by death, imprisonment, fine, removal or disqualification from office, or other penal discipline, classifiable either

as a felony or as a misdemeanor. Clearly, therefore, while some aspects of a filiation proceeding may be criminal in character, it is not a prosecution for the punishment of a crime. Furthermore, by its terms, section 144 purports to fix the limitations of time for commencement of a proceeding only for the purpose of construing provisions of the Code of Criminal Procedure dealing with such time limitations; and the time limitation provisions as well as other statutory sections concerning paternity proceedings were removed entirely from the code in 1925 and embodied in article 8 of the Domestic Relations Law (L. 1925, ch. 255).

Other procedural rules peculiar to criminal cases are equally inapplicable to paternity cases. The allegations need not be established beyond a reasonable doubt (*Commissioner of Public Welfare* v. *Ryan*, 238 App. Div. 607); corroboration of the mother's testimony is not required (*Commissioner of Public Charities* v. *Vassie*, 167 App. Div. 74); a defense of double jeopardy is unavailable (*Hodson* v. *Hoff*, 266 App. Div. 228, affd. 291 N. Y. 518); and a judgment may be rendered in the absence of the defendant (N. Y. City Crim. Cts. Act, § 67, subd. 2) — to name only a few.

Nor can the paternity proceeding properly be deemed a civil action governed by the Civil Practice Act and Rules of Civil Practice, which action must be commenced by the service of a summons. While it is in a sense a dispute between private litigants for the enforcement of rights and the prevention of wrongs with regard to obligations of financial support, it is a dispute in which the State has an interest, in which it may participate on behalf of the mother, and in which the machinery of the criminal courts is invoked. In fact, it was not until comparatively recently that private parties as well as governmental bodies were given the right to initiate a paternity proceeding. The illegitimate child was deemed at common law *filius nullius,* the child of nobody (*People ex rel. Lawton* v. *Snell*, 216 N. Y. 527; 1 Blackstone's Comm., p. 459). Hence, as *filius populi,* the obligation of support was not on the parents but on the community.

It was in order to relieve the community's financial burden and to indemnify it that the statutory paternity proceeding was created, through the enactment of the English Poor Law of 1576 (Stat. 18 Eliz. ch 3). Only in 1925 was the mother allowed to bring proceedings in her own name and in her own right as a private litigant (L. 1925, ch. 255). But unlike the private litigant in a common-law action, she must bring her suit in a criminal court by presenting her complaint to the court, in

much the same way as an information is presented in a criminal proceeding. A warrant of arrest can be issued for the defendant forthwith, evidence of good character is admissible, and confessions and admissions must be corroborated by other proof.

In short, the filiation proceeding is not readily categorized as either a civil or a criminal action. It is a creature *sui generis*, to which special rules apply. It may be properly denominated as quasi-criminal, or, as it was under the old code provisions, among "special proceedings of a criminal nature" (Code Crim. Pro., tit. V; *Commissioners of Public Welfare* v. *Simon*, 270 N. Y. 188).

These special proceedings are governed by their own rules, separate and distinct from those generally applicable to civil and criminal actions. We must look to the controlling statutes themselves to find when the proceedings commence — to article VIII of the Domestic Relations Law for the supervening State law, and to article V of the New York City Criminal Courts Act for the particular application to New York City. It should be noted that both — subdivision 3 of section 122 of the Domestic Relations Law and subdivision 2 of section 64 of the New York City Criminal Courts Act — speak very clearly of the *complaint* as instituting the proceeding. Indeed, if the proceeding is "brought by the mother" (§ 122, subd. 1), it can be only through the instrumentality of the complaint. Once she has filed the complaint, the mother can exercise no further control, for the issuance of the warrant or summons is in the sole discretion of the court. By her complaint, she has invoked the court machinery directly, just as she once did indirectly through the medium of the appropriate community agency. This view is borne out by the fact that the cognate section of the Uniform Illegitimacy Act, from which article VIII of the Domestic Relations Law and article V of the New York City Criminal Courts Act are derived, also equates the "time of bringing complaint" with the instituting of proceedings (Uniform Illegitimacy Act, § 8) .

Significantly, however, both statutes eliminated the uniform act provision permitting the court to issue a summons instead of a warrant only with the consent of the complainant (Uniform Illegitimacy Act, § 12). It was no fault of the complainant here that the court did not choose to issue a warrant on April 4, 1956, which indisputably would have commenced proceedings within the limitation period, but instead issued a summons. We hold that for the purposes of construing the limitation provisions, the form of process chosen by the court is immaterial. It is the complainant's act of filing the complaint which effectively com-

mences the action, so that where, as here, the mother has filed her complaint before her child's second birthday, she must be deemed to have "brought her action" within the required two-year period.

The other ground on which defendant predicated his motion to dismiss was that the court lacked jurisdiction over a paternity proceeding in which the mother was a German national and the child was born and still resides in Germany. Since the court below found that the action had not been timely brought, it did not pass on the question of jurisdiction. We find, however, that there was ample authority in the law to support this action. It is immaterial that the mother was not an American citizen, so long as she has alleged actual residence in New York. Subdivision 1 of section 64 of the New York City Criminal Courts Act permits proceedings to be instituted if mother or child resides or is found in the city of New York, or if the putative father resides or is found in the city of New York. Section 135 of the Domestic Relations Law, which is the controlling statute and must be read together with section 64 of the New York City Criminal Courts Act, provides that it is not a bar to the jurisdiction of the court that "the complaining mother or child resides in another county or state" in the United States (*Feyler* v. *Mortimer*, 299 N. Y. 309). Both statutes are in the alternative, indicating that the proceedings are jurisdictionally sufficient if either mother or child meets the tests of residence. No longer is it necessary that the proceeding be brought only in the county, city or town where the child was born (*Keller* v. *Cleary*, 62 App. Div. 609). Now, regardless of citizenship, it is sufficient if either the mother or child resides in the United States. This case is unlike *Feyler* v. *Mortimer* (*supra*) in which both mother and child were residents of Germany. The obligation of support having become directly enforcible by the mother, her bona fide residence in either New York or Connecticut would suffice to empower our courts to determine her rights vis-a-vis the putative father resident in New York, regardless of her nationality. (Cf. *Meissner* v. *Fischman*, 206 Misc. 837.) Given the assurance of adequate support, the mother may then be in a position to send for her child and bring it up under her own supervision.

The order appealed from should be reversed on the law and the complaint reinstated.

BREITEL, FRANK, VALENTE and McNALLY, JJ., concur.

Order unanimously reversed on the law, with $20 costs and disbursements to the appellant and the complaint reinstated.