Benjamin Gassman, J.
In this filiation proceeding, defendant moves to dismiss the proceeding for lack of jurisdiction, based on the claim that neither party resides in the State of New York.
The defendant’s moving affidavit alleges that since 1949, the defendant resided and now resides in Kingston, Pennsylvania and that the complainant is a resident of the State of Arkansas. Defendant states that from July, 1958, to June, 1959, he served a one-year internship at St. Luke’s Hospital in New York City; that in June, 1959, when that internship ended, he was requested by the hospital authorities to stay on until the opening of the medical school in Pennsylvania, and that he terminated his connection with St. Luke’s Hospital on September 18, 1959, and went to Philadelphia, where he is now a student of the Graduate School of Medicine. He alleges that in 1958, he voted in Pennsylvania; that up to September 20, 1959, his automobile was registered in that State; that he registered under the Selective Service Act in Kingston, Pennsylvania, and that when he was commissioned a First Lieutenant in the United States Army Reserve, his residence was stated to be Kingston, Pennsylvania. He further alleges that he applied for and received a license to practice dentistry, in Pennsylvania, based upon his residence in that State, and that when, in connection with the practice of dentistry, he applied for a narcotics license, his address was given as Kingston, Pennsylvania. He therefore contends that he has always been a resident of Pennsylvania, that he never gave up his Pennsylvania residence and that he never intended to be a resident of New York.
The complainant’s affidavit, on the other hand, alleges that she met the defendant in October, 1958, while she was a patient at St. Luke’s Hospital, where the defendant was an interne; that she socialized with him in New York City up to May, 1959, during all of which time, the defendant lived, resided and occupied a room in that hospital, that between January 15, 1959, and May 5, 1959, she engaged in a number of acts of sexual intercourse with the defendant and that “ a majority of said acts took place in his room at St. Luke’s Hospital, in the City of New York ”.
The complainant also states that after she became pregnant, she consulted two physicians in New York City and that on the advice of one of them, she went to New Haven, Connecticut, to consult a physician there, who advised her to stay in New Haven “to wait out her term and to have her child”. She states that she at no time intended to reside in Connecticut and *133 that in her occupation as a student in fashion design, she intended to and intends to live and work in New York City.
In an affidavit submitted by the complainant’s father, he states that on September 18, 1959, he accompanied a New York City police officer to St. Luke’s Hospital, where the warrant in this proceeding was served upon the defendant and that “ at all time up to and including September 18, 1959, the defendant was and represented to your deponent that he was a resident at St. Luke’s Hospital in the City and State of New York”. He also states that his daughter, the complainant, moved to the City of New York on or about September 1, 1958, where she continued to reside until she was advised by her physician to go to New Haven.
Section 64 of the New York City Criminal Courts Act, which governs filiation proceedings in the City of New York provides that 1 ‘ Proceedings may be instituted [in this court] if the mother or child resides or is found iñ the city of New York, or if the putative father resides or is found in the city of New York.” A similar provision is contained in section 122 of the Domestic Relations Law, which governs such proceedings outside of the City of New York.
The jurisdiction conferred on this court by section 64 of the New York City Criminal Courts Act is limited by the provisions contained in section 135 of the Domestic Relations Law. That section is the controlling statute and must be read together with section 64 of the New York City Criminal Courts Act. (Duerr v. Wittmann, 5 A D 2d 326, 331.) Section 135 of the Domestic Relations Law provides that it is not a bar to the jurisdiction of the court that ‘ ‘ the complaining mother or child resides in another county or state ”, and it was held in Feyler v. Mortimer (299 N. Y. 309, 314), that the words “ another State ’ ’ refer to another State within the United States and not to a foreign State or country. Accordingly, in that case, where it appeared as a fact that the mother resided in Germany, it was held that the New York courts had no jurisdiction. Similarly, in Angarita v. Court of Special Sessions (113 N. Y. S. 2d 196) where it appeared that the mother was a resident of Venezuela, it was held that there was a lack of jurisdiction, despite the defendant’s admitted residence in New York. However, that is not the situation in this case, for, whether the complainant be deemed a resident of New York, Arkansas or Connecticut, if the defendant resided in New York, this court would have jurisdiction. “ [I] t is sufficient if either the mother or child resides in the United States. * * * The obligation *134 of support having, become directly, enforcible by the mother, her bona fide residence in either New York or Connecticut would suffice to empower our courts to determine her rights vis-a-vis the putative father resident in New York (Duerr v. Wittmann, supra, p. 331.)
However, the residence of the defendant becomes an important issue in determining whether this court has jurisdiction. That the defendant “ was found ” in the City of New York is clear, for admittedly the warrant was served upon him in this city. It is also clear that the complainant was ‘ ‘ not found ’5 in the City of New York, for admittedly, at the time of the commencement of this proceeding, she was in Connecticut. Hence, it becomes important to determine — as a fact — whether, at the time this proceeding was commenced, both parties resided in New York. If it is determined that the complainant, at that time, resided in New York and that her stay in Connecticut was a temporary one, then the question of the defendant’s residence would become immaterial, for he was found here. On the other hand, if it is determined that the complainant was a resident of Arkansas or Connecticut,- then the question of whether the defendant then resided in New York City becomes important. The mere fact that he was found here would not be enough for the following reasons.
While section 64 of the New York City Criminal Courts Act confers jurisdiction on this court' ‘ if the putative father resides or is found in the city of New York ” (italics supplied), the words “or is found” are not contained in section 135 of the Domestic Relations Law, which limits the jurisdiction of this court where the mother or child reside in another county or State. Section 135 provides that “It is not a bar to the jurisdiction of the court that the complaining mother or child resides in another county or state, if the defendant be a resident of this state ”. (Emphasis supplied.) If, therefore, it is claimed here that the complainant resides in a State other than New York, residence of the defendant in New York must be established as a fact, if this court is to entertain jurisdiction.
A filiation proceeding is a creature of the statute. The authority conferred on this court by article V of the New York Criminal Courts Act may not exceed the authority contained in article 8 of the Domestic Relations Law, of which section 135 is a part. If there were no section 135 of the Domestic Relations Law, the mere “ finding ” of the defendant in New York City would be sufficient to confer jurisdiction on this court, regardless of whether the complainant resided here. However, the Legislature saw fit to enact section 135 and “ We may not, *135 however, close our eyes to the provisions of the latter statute. Even if we found in section 64 evidence of a legislative design to create, insofar as the courts in New York City are concerned, an exception to the jurisdictional prerequisites demanded by section 135 of the Domestic Delations Law, the Constitution of this State would probably intervene to stamp such a construction as invalid (Feyler v. Mortimer, 299 N. Y. 309, 315, supra.)
If effect is to be given to section 135 of the Domestic Delations Law, it must be held that where the mother does not reside in New York, the mere fact that the putative father is found here is not sufficient to confer jurisdiction. Desidence of the defendant in New York must be established.
The affidavits presented on this motion raise an issue as to the residence of each of the parties, which this court cannot determine summarily on affidavits. Such issue should be left for decision by the full trial bench of this court as one of the issues in the paternity proceeding. The trial bench will have the benefit of hearing and seeing the witnesses and will be in a better position to make a determination than will this court from a mere reading of the affidavits.
Accordingly, the motion is denied without prejudice to a renewal thereof at the trial.