In the Matter of NATALIA URBANCIG, Respondent, *v.* PIETRO PIPITONE, Appellant.

First Department, May 13, 1965.

*Salvatore T. De Matteo* of counsel (*Tavolacci & De Matteo,* attorneys), for appellant.

*Joseph L. Belvedere* for respondent.

BREITEL, J. The issue is whether an illegitimate child conceived, born, and resident without the United States, and whose mother is and always has been resident outside the United States, may, on petition of the mother, in a filiation proceeding in this State obtain a declaration of paternity and support from the putative father domiciled and resident in this State. The question arises on a preliminary motion to dismiss in which the jurisdiction of the court was attacked and the motion was denied.

A prior petition had been filed by the mother in April, 1962 in the then Court of Special Sessions. It was dismissed because the statute, then in effect, section 135 of the Domestic Relations Law, barred the bringing of the proceeding unless the mother or child resided in the State or in another State of the United States (*Feyler* v. *Mortimer,* 299 N. Y. 309). Following the enactment of section 521 of the Family Court Act, effective September 1, 1962 (L. 1962, ch. 686) the present proceeding was instituted. The new statute does not contain the same limitations as the old and, instead, provides as follows: "Proceedings to establish paternity may be originated in the county where the mother or child resides or is found or in the county where the putative father resides or is found. The fact that the child was born outside of the state of New York does not bar a proceeding to establish paternity in the county where the putative father resides or is found or in the county where the mother resides or the child is found."

The mother was delivered of the child in Montreal, Canada, in which she resided, on May 4, 1957. The child was born out of wedlock and it is averred that respondent is the father. It is undisputed that at all times in question the mother and child resided outside the United States, namely, in Canada, and that the putative father is resident and domiciled in the State of New York.*

Respondent putative father asserts that the courts of this State are without jurisdiction to establish the paternity of the child or to provide for its support because all of the incidents associated with the conception, birth, and support of the child are matters exclusively of concern to the Province of Quebec in Canada and not to the State of New York. He argues that there is no likelihood that the child or its mother will become public charges of this State, and that therefore there is no New York policy or interest affected. In short, he argues that the State of New York has no legislative jurisdiction over the premises, and, as a corollary consequence, that the courts of this State have no power to impose any obligations of support on him.

The order denying the motion to dismiss the petition should be affirmed. It is well-established law, so long as the statutes make provision therefor, that a State in which a father is resi-

---

* The statement in lieu of a record contains no reference to the domicile or residence of the putative father, but the petition avers that he resides in the State of New York, and this allegation is not denied in his affidavit. The petition also avers that the relationship between the mother and putative father subsisted over three years and five months.

dent or domiciled may require that he support his illegitimate child located elsewhere.

It is of interest and, perhaps, significant that any obligation which may be imposed on the putative father is akin to one to which he is subject under the law of the Province of Quebec in which the events which gave rise to any obligation occurred. Under the Civil Code of that Province it is provided in article 240: "The forced or voluntary acknowledgment by the father or mother of their illegitimate child, gives the latter the right to demand maintenance from each of them, according to circumstances."

Section 521 of the Family Court Act, the statute enacted in 1962 sometime after the decision in the *Feyler* case (*supra*) is compatible with the idea that both legislative and judicial jurisdiction is extended to entertain proceedings with respect to a nonresident child so long as the putative father is resident or domiciled in this State. The mere "finding" of the putative father in this State is not involved in this case, and whether such basis for jurisdiction is sufficient need not be decided.

In *Feyler* v. *Mortimer* (299 N. Y. 309, *supra*), the court, in holding that the New York court was without jurisdiction to entertain the proceeding with respect to a foreign nonresident child, emphasized the limiting language of the statute then in effect in making that conclusion necessary. It was said by Judge Fuld on behalf of the court (p. 315): "If the Legislature had said nothing more on the subject, if there were no section 135 of the Domestic Relations Law, we would have no hesitancy in permitting action by a mother living in Germany where, as here, the putative father resides in New York City". The subsequent change embodied in the replacement of section 135 of the Domestic Relations Law with section 521 of the Family Court Act thus removed the only jurisdictional obstacle recognized by the court.

The considered statement in the *Feyler* case is in accord with established law. Restatement, Conflict of Laws (§ 455) reads: "A statute of the state of domicil of the father of a minor bastard child will be there applied to compel him to contribute to the support of the child, irrespective of where the mother is domiciled, unless the statute provides otherwise." (New York Annotations to the Restatement, Conflict of Laws, § 455, comments that the section is in accord with the law of New York, with particular footnoted reference to the earlier limiting statute and cases decided thereunder which required that the child shall have been born in the State.) *Comment a.* to the section, in providing the rationale for the black letter section, is illumi-

nating. It reads: "Whether a bastardy statute is criminal or civil in nature, it represents the exercise of the state's police power either to punish misconduct or to impose the onus of supporting a child upon its natural parent to prevent the child becoming a dependent upon society. Therefore, the state of domicil of the father of a minor bastard child has legislative jurisdiction to provide for the imposition upon him of the duty to support the child or to contribute to its support, whether the child was born within the state or whether the mother or the child or neither is domiciled there. The state of the domicil of the father also has judicial jurisdiction to make an order, pursuant to the statute, that the father contribute to the child's support". To be distinguished, of course, from the enforcement of the local statutes is the general inability to maintain an action on a foreign bastardy statute (see Restatement, Conflict of Laws, § 454; cf. *id.* §§ 458, 610 and Illustration 3. But, see, Restatement 2d, Conflict of Laws, Tentative Draft No. 10 [April 27, 1964], pp. 105–106; cf. *State of California* v. *Copus,* 158 Tex. 196, a case involving support of a parent by a son presenting many interesting aspects of legislative jurisdiction turning on personal relationships despite changes in residence by the obligor).

The Restatement rule has its foundation in Professor Beale's analysis (2 Beale, Conflict of Laws, § 454.1, and the cases cited p. 1431, n. 1).* The later commentators are in agreement (see Leflar, Conflict of Laws, § 183; 1 Wharton, Conflict of Laws [3rd ed.], §§ 257–257a; cf. Stimson, Conflict of Laws, pp. 99–103; see Bastardy Action — Nonresident Mother, Ann. 57 ALR 2d 689–695). Whatever misunderstanding has arisen concerning the rule is occasioned by insistence that only one or another purpose is served by the bastardy statutes, namely, to impose a penal sanction on those who father illegitimate children or to prevent burdens upon the local relief rolls where the child is found. The truth is that in addition to these purposes the rule depends upon a personal status that a father bears to his children carrying with it the incident obligation to support. The rule expresses, therefore, a continuing obligation to support which is, *ipso facto,* transitory (Ann. 57 ALR 2d 689, *supra*).

The reciprocal support statutes evince mutual interstate concern in the support of nonresident, and even illegitimate, children. New York, of course, imposes similar obligations

---

* See Restatement 2d *loc. cit., supra,* in which the present reporter, Professor Willis L. M. Reese recommends the omission of sections 454–460 of the old Restatement from the new for reasons not material to their application to this case.

(Domestic Relations Law, §§ 32, 33). Most of the States of the United States have such statutory provisions (9C Uniform Laws Ann., pp. 10–11). The Uniform Reciprocal Enforcement of Support Act, adopted in most of the States of the Union but not by the State of New York, assumes the universality of the obligation to support. It provides in section 7: " Duties of support applicable under this law [act] are those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought " (9C Uniform Laws Ann., p. 26). The act is particularly notable because it adopts the Restatement rule, quoted earlier, that the law of the State in which the obligor resides may be applied to enforce his obligation. New York's comparable Uniform Support of Dependents Law (Domestic Relations Law, art. 3-A) provides: " The natural parents of a child born out of wedlock shall be severally liable for the support of such child, but the liability of the natural father shall not be enforceable unless he has been adjudicated to be the child's father by a court of competent jurisdiction, or he has acknowledged or shall acknowledge paternity of the child in open court or by a verified written statement " (§ 33, subd. 5).

The New York statute also provides, again in consonance with the Restatement rule, that the court shall have: " jurisdiction regardless of the state of last residence or domicile of the petitioner and the respondent and whether or not the respondent has ever been a resident of the initiating state or the dependent person has ever been a resident of the responding state " (id., § 34). Provision is further made for entertaining proceedings regardless of the particular combination of residence or domicile between petitioner and respondent so long as one or the other is present in this State (id., § 35). Of course, the present proceeding is not initiated out-of-State under the Uniform Support of Dependents Law. The statutes, nevertheless, are declaratory of the legislative jurisdiction of the State to enforce an obligation, arising from out-of-State incidents, to support nonresident children. Of course no distinction, for this purpose, should be made between children out-of-State and in foreign countries, if the statutes are otherwise broad enough.

There have been other difficult jurisdictional problems, apart from legislative jurisdiction, with respect to the support of illegitimate children. But these difficulties have been associated with efforts to assert judicial power in the nature of in rem jurisdiction, namely, where the father is not resident or found in the State where the proceeding or action is brought (see, e.g., *Hartford* v. *Superior Court,* 47 Cal. 2d 447; Note: Developments-

Jurisdiction, 73 Harv. L. Rev. 909, 979–980). Generally, there has been little difficulty in assuming personal jurisdiction resting on service upon the father where he is found, and especially where he is domiciled (Ehrenzweig, Conflict of Laws, pp. 398–401). Thus, the court has had no difficulty in sustaining jurisdiction in a paternity proceeding where the father was a resident of New York and the mother and child have always been residents of another State (*People* v. *Tannone*, 271 App. Div. 937; to the same effect in Ohio, see *Yuin* v. *Hilton*, 165 Ohio St. 164).

A caveat may be appropriate. While section 521 of the Family Court Act provides that jurisdiction may be based merely on the finding of the father in the jurisdiction, possibly something more is necessary, namely, that there must be domicile, or at least residence (see *Matter of Carpenter* v. *Justices of Court of Spec. Sess.*, 283 App. Div. 212; Restatement, Conflict of Laws, § 457; cf. *Duerr* v. *Wittmann*, 5 A D 2d 326, 331). As noted earlier, the problem is not reached in this case.

It is evident that the precedents and other authorities recognize that a jurisdiction in which the father of an illegitimate child resides is properly concerned with his meeting the obligations of support. Such obligations he has by virtue of statutes (although not at common law or in the original civil-law world) which are almost universal in the well-developed countries (Ehrenzweig, *op. cit. supra*). It is obvious, too, that the concern is with a kind of status which the father of a child, whether legitimate or illegitimate, brings with him in his proper person. None would dispute that the father of a legitimate child resident elsewhere might have a duty to support such a child under the local law of the father's residence. By almost universal statutory extension the father of an illegitimate child occupies a similar status, albeit of more qualified and limited character. This State is concerned, therefore, with its domiciliaries or residents supporting their children. This is so whether or not it also be a condition that the statutes of the jurisdiction in which the child is resident or where the events occurred also so provided.

Accordingly, the order denying the motion to dismiss the petition should be affirmed, with costs and disbursements to petitioner-respondent.

BOTEIN, P. J., RABIN, McNALLY and STEVENS, JJ., concur.

Order, entered on June 12, 1964, denying the motion to dismiss the petition unanimously affirmed, with $30 costs and disbursements to petitioner-respondent.