In the Matter of DEPARTMENT OF SOCIAL SERVICES, on Behalf of KATHERINE McL., Respondent, v JAY W., Appellant. (Proceeding No. 1.)

In the Matter of TEXAS DEPT. OF HUMAN RESOURCES, on Behalf of KATHERINE A. McL., Respondent, v JAY W., Appellant. (Proceeding No. 2.)

Second Department, December 17, 1984

### APPEARANCES OF COUNSEL

*John E. Lander* for appellant.

*Martin Bradley Ashare, County Attorney* (*Gregory M. Hensas* of counsel; *Vicki M. Richards* on the brief), for respondents.

### OPINION OF THE COURT

BROWN, J.

On these appeals we are asked to consider, *inter alia,* whether a proceeding to establish paternity, brought more than five years after the birth of the child, was properly commenced by the child's mother on behalf of a public welfare official of a sister State. We conclude that the proceeding was properly commenced and that the finding of paternity and the support order predicated thereon should be upheld.

In late February or early March, 1974, petitioner Katherine McL., who was then a Michigan resident, met appellant, whom she knew as Jay W., in Florida. Shortly thereafter they engaged in sexual relations. Toward the end of March, 1974, Ms. McL. returned to Michigan, where she resided with her parents, and Jay W. moved to Illinois. In April, 1974, Ms. McL. discovered that she was pregnant and promptly advised Jay W. by telephone. On December 1, 1974, she gave birth in Michigan to a son and named Jay W. as the father on the hospital records. The parties continued to communicate with one another until January, 1976 when Ms. McL. lost contact with the appellant.

On August 21, 1980, Ms. McL. commenced proceeding No. 1 in the Family Court, Suffolk County, by the filing of a petition which was captioned "PATERNITY PETITION (Mother)" and which named herself as petitioner and listed an Illinois address. Although she was living temporarily in Chicago at the time that the proceeding was commenced, Ms. McL. returned to Michigan in or about October, 1980. During the period from May, 1975, through the commencement of proceeding No. 1 in August, 1980, Ms. McL. was a recipient of Aid to Dependent Children (ADC) benefits from the State of Michigan Department of Social Services. Along with the petition, Ms. McL. submitted a sworn statement, dated August 18, 1980, and made by a representative

of the Child Support Unit of the Washtenaw County, Michigan, Department of Social Services, which read as follows:

"To Whom it may Concern:

"Katherine [McL.] has the permission of the STATE of MICHIGAN to act as its agent for the purpose of pursuing child support from Jay [W.] Ms. [McL.] is currently receiving Aid to Dependent Children funds from the State of Michigan".

On October 20, 1980, a summons was issued by the Family Court, Suffolk County, directing appellant to appear on November 6, 1980, to respond to the paternity petition. The caption of the summons listed the petitioner as "DSS OBO KATHERINE MCL * * *".

Following the completion of discovery and a series of adjournments, the matter was set down for trial on October 29, 1981. On that day appellant moved to dismiss proceeding No. 1 on the ground, *inter alia,* that Ms. McL. was acting in her own right and therefore the proceeding was untimely brought since it had been commenced by her more than two years after the birth of the child. The Family Court denied the application, finding that appellant had waived any Statute of Limitations defense by failing to assert it in either a preanswer motion to dismiss or in his answer (CPLR 3211, subd [e]). Thereupon, a trial was conducted on the merits. The only witness to testify was Ms. McL. At the conclusion of the trial, the court found that it had been established by clear and convincing evidence that appellant was the father of the child. An order of filiation was thereafter entered on January 4, 1982.

In contravention of the mandate of section 545 of the Family Court Act, the court declined to schedule a support hearing and instead directed Ms. McL. to file an appropriate petition for support pursuant to the Uniform Support of Dependents Law, if she be so advised.

In February, 1982, Ms. McL., who was then living in Texas, commenced proceeding No. 2 in that State which was referred to the Family Court, Suffolk County, for disposition pursuant to the Uniform Support of Dependents Law (Domestic Relations Law, art 3-A). That proceeding ultimately resulted in an order of support of the Family Court, Suffolk County, entered January 18, 1983, which directed appellant to pay $193.50 per month to the Suffolk County CSEB/Support Collection Unit for the support of his child. These appeals ensued.

Appellant does not take issue on these appeals with respect to the amount of the support award. His arguments are directed

rather to the validity of the filiation order upon which the support order is predicated. He argues that the paternity proceeding herein was actually brought by Ms. McL. on her own behalf and not as agent for the Michigan Department of Social Services. Accordingly, he asserts, proceeding No. 1 was barred by the two-year Statute of Limitations for paternity proceedings brought by the mother of a child born out of wedlock which was in effect at the time of the commencement of the proceeding (Family Ct Act, § 517, former subd [a], as added by L 1962, ch 686) and that it was an abuse of discretion for the Family Court to have denied him leave to amend his answer to include that defense. Appellant argues further that, regardless of any Statute of Limitations claim, the Family Court Act does not authorize a public welfare official to appoint an agent to commence suit on behalf of a department of social services and that, therefore, Ms. McL. lacks standing to bring this proceeding as such an agent.

With regard to the claimed defense of the Statute of Limitations, if the Family Court correctly denied appellant leave to amend his answer to assert the Statute of Limitations, then appellant's failure to raise that defense in a preanswer motion to dismiss or in his answer constituted a waiver thereof (CPLR 3211, subd [a], par 5; 3211, subd [e]). In that case, the question of whether Ms. McL. was acting on her own behalf or as a representative of the Michigan Department of Social Services would, of course, be irrelevant.

It is well established that leave to amend pleadings is to be freely given, absent prejudice or surprise resulting directly from the delay (CPLR 3025, subd [b]; *Fahey v County of Ontario,* 44 NY2d 934). The determination, however, is one to be made on a case-by-case basis and, in the last analysis, rests within the sound discretion of the trial court (*Mayers v D'Agostino,* 58 NY2d 696; *Fulford v Baker Perkins, Inc.,* 100 AD2d 861). The nature of the claimed prejudice at bar, resulting from appellant's delay in seeking to amend his pleading, is the fact that the motion to amend was not made until the day of trial, requiring preparation for a trial which would not have been necessary if the defense in the amended pleading had proved successful. Concededly, as we have heretofore noted, such prejudice may, in some cases, be overcome by the imposition of costs (see *Campbell v La Forgia Oil Co.,* 81 AD2d 824). Nevertheless, under the circumstances of this case we are of the view that the unexplained delay in making the motion constituted sufficient prejudice to justify its denial. The information regarding Ms. McL.'s status and her receipt of public funds in Michigan, upon which

appellant based his defense, was available to him from the commencement of the paternity proceeding and no reasonable excuse was offered for the delay in making the motion for leave to amend. While the general rule is that leave to amend pleadings should be freely given, that is not to say that in all cases it should be granted. In this case, where appellant inexcusably failed to make the application until the trial had commenced, there was a sufficient basis to justify the court's denial of his motion (*Mayers v D'Agostino, supra; Fulford v Baker Perkins, Inc., supra; Matter of Schwartz v New York City Tr. Auth.,* 104 AD2d 370; *Shanahan v Shanahan,* 92 AD2d 566). The matter was one resting within the discretion of the trial court and we are not prepared to say, upon the record before us, that it abused its discretion (*Mayers v D'Agostino, supra*).

But even if we were to conclude that the Family Court should have permitted appellant to amend his answer to assert the Statute of Limitations as a defense, we would be of the opinion that the paternity proceeding at bar is properly viewed as one originated by a public welfare official and, therefore, timely under the 10-year Statute of Limitations applicable thereto (Family Ct Act, § 517, subd [b]). Beyond that, there exists a serious question with respect to the constitutionality of section 517 of the Family Court Act under the equal protection clause as it affects the ability of children born out of wedlock to enforce their right to support. In light of our reasoning, however, we need not reach this latter issue and, accordingly, do not rule on the constitutionality of the statute.

Paternity proceedings, brought pursuant to article 5 of the Family Court Act, have a twofold purpose: to determine paternity and to secure support for the child (*Matter of J.,* 50 AD2d 890, app dsmd 39 NY2d 741; *Hough v Light,* 275 App Div 299; *Matter of Geraldine K. v Elliot D.B.,* 99 Misc 2d 720). An examination of the historical origins of paternity laws reveals that the original basis for their creation was to provide a means by which governmental entities could recover funds expended for the support of children born out of wedlock who were or might become public charges (see *Matter of Department of Social Servs. [Sandra C.] v Thomas J.S.,* 100 AD2d 119, 130). In recent years, however, the emphasis has shifted from the protection of the public purse to a recognition that such proceedings are a necessary measure to ensure the welfare of the child. As was recently stated by the Court of Appeals in *Matter of L. Pamela P. v Frank S.* (59 NY2d 1, 5): "Although at one time the objective of paternity proceedings was merely to prevent a child born out of wedlock from becoming a public charge, it is now well estab-

lished that the appropriate emphasis must be upon the welfare of the child (*Schaschlo v Taishoff*, 2 NY2d 408; *Matter of Nardone v Coyne*, 18 NY2d 626, affg 23 AD2d 819; *Matter of J. [Anonymous]*, 50 AD2d 890, app dsmd 39 NY2d 741). The primary purpose of establishing paternity is to ensure that adequate provision will be made for the child's needs, in accordance with the means of the parents".

Nonetheless, article 5 of the Family Court Act still retains as an objective the protection of the public from bearing the cost of supporting such children where there exists a viable, legally obligated source of support. Thus, section 522 of the Family Court Act provides that, among other persons, a public welfare official of the county, city or town where the mother resides, or the child is found, may originate such proceedings, "if the mother or child is or is likely to become a public charge" (Family Ct Act, § 522). In further aid of this purpose of protecting public funds, the act provides that where the proceeding is brought by a public welfare official it may be commenced up to 10 years after the birth of the child (Family Ct Act, § 517, subd [b]). This extended period of limitations is to be compared with the much shorter five-year limitation period (two years at the time of the commencement of proceeding No. 1) imposed for proceedings brought by the natural mother (Family Ct Act, § 517, subd [a]). As will be pointed out hereafter, it is this very discrepancy between the two periods of limitation which is at the foundation of the challenges to the constitutionality of subdivision (a) of section 517. For the moment, however, suffice it to say that the validity of this extended period of limitation for proceedings brought by a public welfare official has been upheld against a challenge by a putative father on the ground that the State's paramount interest in conserving public funds outweighs a putative father's right to be protected against stale claims (*Matter of Department of Social Servs. [Sandra C.] v Thomas J.S.*, 100 AD2d 119, 131, *supra*). While it is true that there is no explicit language in either subdivision (b) of section 517 or in section 522 of the Family Court Act defining the term "public welfare official" as encompassing the public welfare officials of sister States, it is implicit from an examination of the entire statutory scheme that such officials are proper petitioners.

Section 521 of the Family Court Act, which governs venue of paternity proceedings, provides, *inter alia*, that such proceedings "may be originated in the county where the mother or child resides or is found". That same section further provides that the "fact that the child was born outside of the state of New York does not bar a proceeding to establish paternity in the county

where the putative father resides or is found" (Family Ct Act, § 521). Thus, it is clear that where the petitioner is the mother of the child, there is no requirement that either she or the child be residents of New York in order to commence a paternity proceeding. All that is necessary to establish jurisdiction is that the putative father is a resident of, or is found in, this State (Family Ct Act, § 521; *Matter of Urbancig v Pipitone*, 23 AD2d 193; *Matter of Isabel C v Andres M*, 77 Misc 2d 534).

As indicated, section 522 of the Family Court Act states that the proceeding may be originated by, among other persons, the "public welfare official" of the county, city or town where the mother or child resides. Since there is no jurisdictional requirement that the mother or child be resident or found in New York, this section may be read as implying that where the child is a public charge of a political subdivision of a sister State and the putative father who is alleged to have an obligation of support resides in New York, a "public welfare official" of that State is also a proper party for commencing a paternity proceeding under article 5. Further, it is clear that under the Uniform Support of Dependents Law (Domestic Relations Law, art 3-A), a sister State, or a political subdivision or official agency thereof, which is furnishing support to a dependent or is likely to furnish support to a dependent to whom a duty of support is owed, shall have the same rights as the dependent to invoke the provisions of the uniform statute (Domestic Relations Law, § 36). In the case of a child born out of wedlock, however, a predicate to the commencement of such a support proceeding is either an adjudication of paternity by a court of competent jurisdiction or an acknowledgement of paternity by the putative father (Domestic Relations Law, § 33, subd 5).

Inasmuch as the Legislature has clearly expressed an intent to permit public welfare officials of sister States to bring proceedings to recover moneys expended by them for the support of the dependents of New York residents who have an obligation of support, it follows that they should be permitted to avail themselves of the procedures for establishing paternity where such an adjudication is a precondition to the recovery of such support. Thus, we conclude that the State of Michigan Department of Social Services is a "public welfare official" for purposes of the statute (Family Ct Act, §§ 517, 522).

That brings us to the question of whether the designation of Ms. McL. as the agent of the Michigan Department of Social Services was proper. We conclude that, under the circumstances at bar, it was. There is nothing in the record to dispute the fact

that Ms. McL. had been a recipient of public funds in Michigan for the support of her child for several years prior to the commencement of this proceeding. In determining whether a paternity proceeding may be brought by a public welfare official, one must look to the status of the parties at the time of the filing of the petition (Family Ct Act, § 522; *Matter of Commissioner of Welfare of City of N. Y. v Jones*, 73 Misc 2d 1014). In the instant case, the sworn statement of an official of the Michigan Department of Social Services established that as of August 18, 1980, three days before the petition was filed in New York, Ms. McL. was receiving funds from that State in the category of Aid to Dependent Children. While it does appear that at about the same time Ms. McL. took up residence for a brief time in the State of Illinois, there is nothing to indicate that the child went with her or ever ceased receiving public funds from the State of Michigan. The statute speaks in terms of the public welfare official of the political subdivision "where the mother resides or the *child is found*" (Family Ct Act, § 522; emphasis added). Appellant's real objection to Ms. McL.'s designation as agent is that it was designed solely to avoid the Statute of Limitations. We find no support for such claim in the record. This is not a case in which the mother and child were not recipients of public funds but the mother sought to be designated as an agent of a public welfare official merely to avoid a time bar. Here, Ms. McL. was indisputably a long-term recipient of public assistance. The State of Michigan clearly had an interest in seeking to establish paternity in order to relieve itself of any continuing financial burden. There is no question but that a Michigan "public welfare official" had standing to bring the suit and we see no reason why such official could not designate Ms. McL. as his agent for that purpose. Contrary to appellant's contention, there was no attempt here to perpetrate a fraud on either him or the court. The mother's status as agent of the Michigan Department of Social Services was revealed from the very beginning. Therefore, we conclude that the paternity proceeding was timely commenced by a "public welfare official * * * not more than ten years after the birth of the child" (Family Ct Act, § 517, subd [b]).

Were we to conclude otherwise, however, and find that the proceeding was commenced by Ms. McL. on her own behalf, we would be required to confront the question of whether the shorter Statute of Limitations for proceedings brought by the mother of a child born out of wedlock is violative of the equal protection clause. At the time this proceeding was commenced, the Statute of Limitations for a paternity proceeding brought by

the mother of a child born out of wedlock was two years from the time of birth (Family Ct Act, § 517, former subd [a], as added by L 1962, ch 686). The period of limitation subsequently was enlarged to five years (Family Ct Act, § 517, subd [a], as amd by L 1983, ch 305, § 1). While this amendment has recently been given retroactive effect (*Matter of Meegan S. v Donald T.*, 103 AD2d 913), the issue of retroactivity is not relevant under the circumstances at bar since proceeding No. 1 was commenced approximately 5½ years after the child's birth. But even this five-year period of limitation has recently been declared unconstitutional as violative of the equal protection clause (*Matter of Patricia R. v Peter W.*, 120 Misc 2d 986). The court based its reasoning upon two recent decisions of the United States Supreme Court which struck down State Statutes of Limitation for paternity proceedings of one year (*Mills v Habluetzel*, 456 US 91) and two years (*Pickett v Brown*, 462 US 1, 103 S Ct 2199). In those cases the court found that the periods of limitations violated the equal protection clause by imposing a burden upon children born out of wedlock seeking to establish their right to support which was not imposed upon legitimate children. More recently the Supreme Court vacated a judgment upholding Pennsylvania's six-year Statute of Limitations for such actions and remitted the case to the Supreme Court of Pennsylvania for further consideration in light of the *Pickett* decision (*Astemborski v Susmarski*, __ US __, 103 S Ct 3105; see, also, *Daniel v Collier*, __ US __, 104 S Ct 53).

In reaching its decision in the *Mills* and *Pickett* cases (*supra*), the court reasoned that under the equal protection clause an analysis of the validity of a Statute of Limitations for a paternity proceeding must be based upon two factors. First, the period of limitation must be sufficiently long to afford parties with an interest in children born out of wedlock a reasonable opportunity to institute a paternity proceeding on their behalf. In evaluating the reasonableness of the opportunity to commence proceedings, due consideration should be given to the financial and emotional difficulties faced by the mother following the birth of the child, the possibility of her continuing affection for the putative father and the desire to avoid the disapproval of family and community (*Mills v Habluetzel*, 456 US 91, 99-100, *supra; Pickett v Brown*, 462 US 1, 12-13, *supra*). Second, the period of limitation must be substantially related to a State's interest in avoiding litigation of stale claims. It was noted by the court that recent scientific advances in blood-grouping tests — most notably the advent of the human leucocyte antigen (HLA) test — had diminished the significance of the State's interest

in avoiding stale claims in this type of proceeding (*Mills v Habluetzel, supra,* pp 98-105; *Pickett v Brown,* 462 US 1, 17-18, *supra*). As noted, this court has recently applied these principles in rejecting a challenge by a putative father to the 10-year Statute of Limitations for paternity proceedings under subdivision (b) of section 517 of the Family Court Act (*Matter of Department of Social Servs. [Sandra C.] v Thomas J.S.,* 100 AD2d 119, *supra*).

It was largely in response to the *Mills* and *Pickett* decisions (*supra*) that the Legislature amended subdivision (a) of section 517 to increase the general period of limitation in paternity proceedings from two years to five years (L 1983, ch 305, § 1; see *Matter of Department of Social Servs. [Sandra C.] v Thomas J.S., supra;* Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Part 1, Family Ct Act, § 517, pp 510-511). Apparently the Legislature was of the mind that had it not done so, the statute, if challenged, would have been declared unconstitutional based upon *Mills* and *Pickett.* While the question of whether the new five-year limitation period is constitutional has yet to be ruled upon at the appellate level (cf. *Matter of Meegan S. v Donald T.,* 103 AD2d 913, *supra*), it is clear that the prior two-year Statute of Limitations did not meet constitutional muster. However, as noted, we find it unnecessary to reach the constitutional issue and leave that question for another day.

Finally, there is a procedural issue not addressed by either of the parties, which requires our comment. Appellant, by his notice of appeal, purports to appeal from both the order of filiation issued in the paternity proceeding pursuant to article 5 of the Family Court Act (proceeding No. 1), and also from the order of support issued in the support proceeding pursuant to article 3-A of the Domestic Relations Law (Uniform Support of Dependents Law) (proceeding No. 2). Where, as here, the petition in a paternity proceeding seeks support, a filiation order which makes no provision for support is not appealable without permission (Family Ct Act, § 1112; *Matter of Jane PP. v Paul QQ.,* 64 NY2d 15). An order of filiation is generally brought up for review, however, on the appeal from a subsequent order of support (*Nancy V. v Raymond E. C.,* 75 AD2d 599). The order of support in this case, however, as noted, was not entered in the course of the paternity proceeding but as the result of a separate and independent proceeding commenced under the Uniform Support of Dependents Law (Domestic Relations Law, art 3-A). The Family Court Act provides that in a proceeding in which the court has made an order of filiation, "the court *shall direct* the

parent or parents possessed of sufficient means or able to earn such means to pay * * * a fair and reasonable sum * * * as the court may determine and apportion for such child's support" (Family Ct Act, § 545; emphasis added). Thus, in this case, the court in the paternity proceeding upon resolving the issue of paternity should have proceeded to determine as well the issue of support, within that same proceeding. Apparently the court declined to do so in this case because Ms. McL. was an out-of-State resident, and a support proceeding could be commenced by her in her home State under the Uniform Support of Dependents Law thereby obviating the need for her to remain in New York.

■ Notwithstanding the fact that the orders were the result of two distinct proceedings, however, the order of filiation is nonetheless reviewable upon the appeal from the support order, just as it would be if the support order had been issued in the paternity proceeding (*Matter of Jane PP. v Paul QQ.*, 64 NY2d 15, *supra*). We would note, moreover, that even if such review were not available in this case, this court could and would exercise its discretion to grant leave to appeal from the order of filiation (Family Ct Act, § 1112).

Accordingly, the appeal from the order entered January 4, 1982 should be dismissed and the order entered January 18, 1983 should be affirmed.

GIBBONS, J. P., BRACKEN and NIEHOFF, JJ., concur.

Appeal from an order of the Family Court, Suffolk County, entered January 4, 1982 dismissed, without costs or disbursements. That order is not an order of disposition (Family Ct Act, § 1112); it is brought up for review on the appeal from an order of the same court, entered January 18, 1983.

Order entered January 18, 1983 affirmed, without costs or disbursements.