## MILLS v. HABLUETZEL

No. 80–6298.   Argued January 12, 1982—Decided April 5, 1982

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined.   O'CONNOR, J., filed a concurring opinion, in which BURGER, C. J., and BRENNAN and BLACKMUN, JJ., joined, and in Part I of which POWELL, J., joined, *post*, p. 102.   POWELL, J., filed a statement concurring in the judgment, *post*, p. 106.

*Michael E. Mankins* argued the cause and filed a brief for appellant.

*Lola L. Bonner* argued the cause for appellee. With her on the brief was *John H. Flinn*.

JUSTICE REHNQUIST delivered the opinion of the Court.

This Court has held that once a State posits a judicially enforceable right of children to support from their natural fathers, the Equal Protection Clause of the Fourteenth Amendment prohibits the State from denying that same right to illegitimate children. *Gomez* v. *Perez*, 409 U. S. 535 (1973). In this case we are required to determine the extent to which the right of illegitimate children recognized in *Gomez* may be circumscribed by a State's interest in avoiding the prosecution of stale or fraudulent claims. The Texas Court of Civil Appeals, Thirteenth Supreme Judicial District, upheld against federal constitutional challenges the State's one-year statute of limitation for suits to identify the natural fathers of illegitimate children. We noted probable jurisdiction. 451 U. S. 936. We begin by reviewing the history of the statute challenged by appellant.

## I

Like all States, Texas imposes upon parents the primary responsibility for support of their legitimate children. See Tex. Fam. Code Ann. (Code) §§ 4.02, 12.04(3) (1975 and Supp. 1982). That duty extends beyond the dissolution of marriage, Code § 14.05, regardless of whether the parent has custody of the child, *Hooten* v. *Hooten*, 15 S. W. 2d 141 (Tex. Civ. App. 1929), and may be enforced on the child's behalf in civil proceedings. Code § 14.05(a). Prior to our decision in *Gomez*, Texas recognized no enforceable duty on the part of a natural father to support his illegitimate children. See *Home of the Holy Infancy* v. *Kaska*, 397 S. W. 2d 208 (Tex. 1965); *Lane* v. *Phillips*, 69 Tex. 240, 6 S. W. 610 (1887); *Bjorgo* v. *Bjorgo*, 391 S. W. 2d 528 (Tex. Civ. App. 1965). A natural father could even assert illegitimacy as a defense to

prosecution for criminal nonsupport. See *Curtin* v. *State*, 155 Tex. Crim. 625, 238 S. W. 2d 187 (1950).

Reviewing the Texas law in *Gomez*, we held that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." 409 U. S., at 538. "[O]nce a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers," we stated, "there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." *Ibid.* Although we recognized that "the lurking problems with respect to proof of paternity . . . are not to be lightly brushed aside," we concluded that they did not justify "an impenetrable barrier that works to shield otherwise invidious discrimination." *Ibid.* Accordingly, we held Texas' denial of support rights to illegitimate children to be a denial of equal protection of law.

In response to our decision in *Gomez*, the Texas Legislature considered legislation that would have provided illegitimate children with a cause of action to establish the paternity of their natural fathers and would have imposed upon those fathers the same duty of support owed to legitimate children. The legislature did not enact that legislation, however, choosing instead to establish a procedure by which natural fathers voluntarily could legitimate their illegitimate children and thereby take upon themselves the obligation of supporting those children. *Texas Dept. of Human Resources* v. *Hernandez*, 595 S. W. 2d 189, 191 (Tex. Civ. App. 1980). No provision was made for illegitimate children to seek support from fathers who fail to support them.

Not suprisingly, this legislation was found by Texas courts to be an inadequate response to *Gomez*. A panel of the Texas Court of Civil Appeals held that, because of *Gomez*, "[w]hen the Legislature later provided judicial relief against the father on behalf of a legitimate child for support, it neces-

sarily provided the same relief on behalf of an illegitimate child." *In re R—— V—— M——*, 530 S. W. 2d 921, 922–923 (1975). Only after this judicial recognition of a right to support did the Texas Legislature establish procedures for a paternity and support action on behalf of illegitimate children. *Texas Dept. of Human Resources* v. *Hernandez, supra,* at 191.

The rights of illegitimate children to obtain support from their biological fathers are now governed by Chapter 13 of Title 2 of the Code § 13.01 *et seq.* The Code recognizes that establishment of paternity is the necessary first step in all suits by illegitimate children for support from their natural fathers. See *In re Miller*, 605 S. W. 2d 332, 334 (Tex. Civ. App. 1980); *Texas Dept. of Human Resources* v. *Delley*, 581 S. W. 2d 519, 522 (Tex. Civ. App. 1979). Accordingly, Chapter 13 establishes procedures to be followed in judicial determinations of paternity and works in conjunction with other provisions of the Code to establish the duty of fathers to support their illegitimate children. See Code §§ 12.04, 14.05. Once paternity has been determined, Chapter 13 authorizes the court to order the defendant father "to make periodic payments or a lump-sum payment, or both, for the support of the child until he is 18 years of age," Code § 14.05(a). See Code § 13.42(b).

Although it granted illegitimate children the opportunity to obtain support by establishing paternity, Texas was less than generous. It significantly truncated that opportunity by the statutory provision at issue in this case, § 13.01:

> "A suit to establish the parent-child relationship between a child who is not the legitimate child of a man and the child's natural father by proof of paternity must be brought before the child is one year old, or the suit is barred."

Texas views this provision as part of the substantive right accorded illegitimate children, not simply as a procedural limi-

tation on that right. *Texas Dept. of Human Resources* v. *Hernandez, supra,* at 192–193. Moreover, Texas courts have applied § 13.01 literally to mean that failure to bring suit on behalf of illegitimate children within the first year of their life "results in [their] being forever barred from the right to sue their natural father for child support, a limitation their legitimate counterparts do not share." *In re Miller, supra,* at 334. Thus, in response to the constitutional requirements of *Gomez,* Texas has created a one-year window in its previously "impenetrable barrier," through which an illegitimate child may establish paternity and obtain paternal support.[1]

## II

Appellant in this case is the mother of a child born out of wedlock in early 1977. In October 1978, she and the Texas Department of Human Resources, to which appellant had as-

---

[1] Since the Court of Civil Appeals' decision in this case, the Texas Legislature has amended § 13.01 to increase to four years the period for asserting paternity claims. 1981 Tex. Gen. Laws, ch. 674, § 2, Tex. Fam. Code Ann. § 13.01 (Supp. 1982). Appellee argues that this amendment renders appellant's claim moot, or at least requires a remand so that the Texas courts can determine whether the amendment is retroactive. We disagree.

The case is not moot because § 13.01, as applied by the courts below, continues to stand as a bar to appellant's assertion of a paternity claim against appellee. At the filing of appellant's claim the child was more than one year old, and on September 1, 1981, the effective date of the amendment, the child was more than four years old.

It seems probable that the amendment would not be applied retroactively by Texas courts. "It is well established law in Texas that after a cause of action has become barred by a statute of limitation, the defendant has a vested right to rely on the statute as a defense, and the state legislature cannot divest the defendant of this right by thereafter lifting the bar of limitation which had accrued in favor of the defendant. Any statute that had such an effect would be considered a retroactive law violative of Article 1, sec. 16 of the Constitution of the State of Texas." *Penry* v. *Wm. Barr, Inc.,* 415 F. Supp. 126, 128 (ED Tex. 1976) (citations omitted). See also *Mellinger* v. *City of Houston,* 68 Tex. 37, 3 S. W. 249 (1887); *Brant-*

signed the child's support rights,[2] brought suit on behalf of the child to establish that appellee was his natural father. Appellee answered by asserting that the action was barred by § 13.01 because the child was one year and seven months old when the suit was filed. The trial court agreed with appellee and dismissed the suit.

The dismissal was affirmed on appeal by the Texas Court of Civil Appeals, and discretionary review was denied by the Texas Supreme Court upon a finding of no reversible error.[3] The Court of Civil Appeals, relying upon its decision in *Texas Dept. of Human Resources* v. *Hernandez*, 595 S. W. 2d 189 (1980), held that the one-year limitation was not tolled during minority and did not violate the Equal Protection Clause of the Fourteenth Amendment. The *Hernandez* decision in turn relied upon the constitutional analysis in *Texas Dept. of Human Resources* v. *Chapman*, 570 S. W. 2d 46 (Tex. Civ. App. 1978), where another division of the Court of Civil Appeals had found that "the legitimate state interest in precluding the litigation of stale or fraudulent claims" was rationally related to the one-year bar and therefore did not deny illegitimate children equal protection of the law. *Id.*, at 49.

Appellant argues that the § 13.01 bar imposes a burden on illegitimate children that is not shared by legitimate children, and that the burden is not justified by the State's interest in avoiding the prosecution of stale or fraudulent claims. In

---

*ley* v. *Phoenix Insurance Co.*, 536 S. W. 2d 72, 74 (Tex. Civ. App. 1976); *Southern Pacific Transportation Co.* v. *State*, 380 S. W. 2d 123, 127 (Tex. Civ. App. 1964).

[2] Prior to filing this support suit against appellee, appellant sought financial assistance under the Aid to Families with Dependent Children program. As conditions to eligibility for such assistance, appellant was required "to assign the State any rights to support" held by the child, 42 U. S. C. § 602(a)(26)(A), and "to cooperate with the State . . . in establishing the paternity of [the] child born out of wedlock with respect to whom aid [was] claimed." 42 U. S. C. § 602(a)(26)(B)(i).

[3] The decisions of the Texas Court of Civil Appeals and the Texas Supreme Court are not officially reported.

addition, appellant argues that § 13.01 deprives illegitimate children of their right to support without due process of law. Because we agree with appellant's first argument, we need not consider her second.

### III

Our decision in *Gomez* held that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." 409 U. S., at 538. Specifically, we held that a State which grants an opportunity for legitimate children to obtain paternal support must also grant that opportunity to illegitimate children. If *Gomez* and the equal protection principles which underlie it are to have any meaning, it is clear that the support opportunity provided by the State to illegitimate children must be more than illusory. The period for asserting the right to support must be sufficiently long to permit those who normally have an interest in such children to bring an action on their behalf despite the difficult personal, family, and financial circumstances that often surround the birth of a child outside of wedlock. It would hardly satisfy the demands of equal protection and the holding of *Gomez* to remove an "impenetrable barrier" to support, only to replace it with an opportunity so truncated that few could utilize it effectively.

The fact that Texas must provide illegitimate children with a bona fide opportunity to obtain paternal support does not mean, however, that it must adopt procedures for illegitimate children that are coterminous with those accorded legitimate children. Paternal support suits on behalf of illegitimate children contain an element that such suits for legitimate children do not contain: proof of paternity. Such proof is often sketchy and strongly contested, frequently turning upon conflicting testimony from only two witnesses. Indeed, the problems of proving paternity have been recognized repeatedly by this Court. *Parham* v. *Hughes*, 441

U. S. 347, 357, 361 (1979); *Lalli* v. *Lalli,* 439 U. S. 259, 269 (1978); *Trimble* v. *Gordon,* 430 U. S. 762, 772 (1977); *Gomez* v. *Perez,* 409 U. S., at 538.[4]

Therefore, in support suits by illegitimate children more than in support suits by legitimate children, the State has an interest in preventing the prosecution of stale or fraudulent

---

[4] Appellant contends that time limitations on the right of illegitimate children to prove paternity would never be justified by the State's desire to avoid litigation of stale or fraudulent claims because "[t]he interests of the state, and those of the alleged father, to prevent incorrect claims of paternity are . . . protected by the recent advance in blood and genetic testing." Brief for Appellant 29. We previously have recognized that blood tests are highly probative in proving paternity, *Little* v. *Streater,* 452 U. S. 1, 6–8 (1981), but disagree with appellant's contention that their existence negates the State's interest in avoiding the prosecution of stale or fraudulent claims.

Traditional blood tests do not prove paternity. They prove nonpaternity, excluding from the class of possible fathers a high percentage of the general male population. H. Krause, Illegitimacy: Law and Social Policy 123–136 (1971). Thus, the fact that a certain male is not excluded by these tests does not prove that he is the child's natural father, only that he is a member of the limited class of possible fathers. More recent developments in the field of blood testing have sought not only to "prove nonpaternity" but also to predict paternity with a high degree of probability. See Terasaki, Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing, 16 J. Fam. L. 543 (1978). The proper evidentiary weight to be given to these techniques is still a matter of academic dispute. See, *e. g.,* Jaffee, Comment on the Judicial Use of HLA Paternity Test Results and Other Statistical Evidence: Response to Terasaki, 17 J. Fam. L. 457 (1979). Whatever evidentiary rule the courts of a particular State choose to follow, if the blood test evidence does not exclude a certain male, he must thereafter turn to more conventional forms of proof—evidence of lack of access to the mother, his own testimony, the testimony of others— to prove that, although not excluded by the blood test, he is not in fact the child's father. As to this latter form of proof, the State clearly has an interest in litigating claims while the evidence is relatively fresh.

This interest is particularly real under Texas procedures. Texas law requires that putative fathers submit to blood tests. Code § 13.02. Refusal to submit to the tests may result in a citation for contempt, Code § 13.02(b), and may be introduced to the jury as evidence that the putative

claims, and may impose greater restrictions on the former than it imposes on the latter. Such restrictions will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest. See *Lalli* v. *Lalli, supra,* at 265; *Trimble* v. *Gordon, supra,* at 767; *Mathews* v. *Lucas,* 427 U. S. 495, 510 (1976).[5] The State's interest in avoiding the litigation of stale or fraudulent claims will justify those periods of limitation that are sufficiently long to present a real threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims.

The equal protection analysis in this case, therefore, focuses on two related requirements. First, the period for obtaining support granted by Texas to illegitimate children must be sufficiently long in duration to present a reasonable opportunity for those with an interest in such children to assert claims on their behalf. Second, any time limitation placed on that opportunity must be substantially related to

---

father has not been biologically excluded from the class of possible fathers. Code § 13.06(d). The results of the blood tests are introduced at a pretrial conference held for the purpose of dismissing the complaint if the father has been excluded by the tests from the class of possible fathers. Code §§ 13.04, 13.05(a). Thus, the only paternity cases which actually go to trial in Texas are those in which the putative father has refused to submit to blood tests or has not been excluded by their results, cases in which conventional types of evidence are of paramount importance.

[5] *Lalli* v. *Lalli* and *Trimble* v. *Gordon* involved the right of illegitimate children to inherit from their natural fathers, while *Mathews* v. *Lucas* involved the right of illegitimate children to receive social security benefits. There is no reason to think that the factual differences between those cases and the present case call for a variation of the general principle which those cases have laid down. In *Lucas* the Court expressly relied on *Gomez* v. *Perez* in reaching its result. 427 U. S., at 507. And in *Lalli* the requirement imposed by New York law for an illegitimate child to inherit from its natural father was that the paternity of the father be declared in a judicial proceeding sometime before his death. 439 U. S., at 263. Thus, even those of our cases which have dealt with entitlement to government benefits, or with the intestate distribution of a natural father's property, have frequently involved support orders or adjudications of paternity as a means for establishing the entitlement or the right there sought.

the State's interest in avoiding the litigation of stale or fraudulent claims. Applying these two requirements to the one-year right granted by Texas, we find a denial of equal protection.

By granting illegitimate children only one year in which to establish paternity, Texas has failed to provide them with an adequate opportunity to obtain support. Paternity suits in Texas "may be brought by any person with an interest in the child," Code § 11.03, but during the child's early years will often be brought by the mother. It requires little experience to appreciate the obstacles to such suits that confront unwed mothers during the child's first year. Financial difficulties caused by childbirth expenses or a birth-related loss of income, continuing affection for the child's father, a desire to avoid disapproval of family and community, or the emotional strain and confusion that often attend the birth of an illegitimate child all encumber a mother's filing of a paternity suit within 12 months of birth. Even if the mother seeks public financial assistance and assigns the child's support claim to the State, it is not improbable that 12 months would elapse without the filing of a claim. Several months could pass before a mother finds the need to seek such assistance, takes steps to obtain it, and is willing to join the State in litigation against the natural father.[6] A sense of the inadequacy of this one-year period is accentuated by a realization that failure to file within 12 months "results in illegitimates being forever barred from the right to sue their natural father for child support," *In re Miller*, 605 S. W. 2d, at 334, while legitimate children may seek such support at any time until the age of 18.[7]

---

[6] See n. 2, *supra*.

[7] The Texas Family Code imposes no period of limitation on the right of a legitimate child to obtain support from its father, a right which lasts until the child is 18 years old. § 14.05(a). Although Texas law includes a 4-year limitations period applicable to "[e]very action . . . for which no limitation is otherwise prescribed," Tex. Rev. Civ. Stat. Ann., Art., 5529

Moreover, this unrealistically short time limitation is not substantially related to the State's interest in avoiding the prosecution of stale or fraudulent claims. In *Gomez* we recognized that the problems of proof in paternity suits "are not to be lightly brushed aside," but held that such problems do not justify a complete denial of support rights to illegitimate children. 409 U. S., at 538. Neither do they justify a period of limitation which so restricts those rights as effectively to extinguish them. We can conceive of no evidence essential to paternity suits that invariably will be lost in only one year, nor is it evident that the passage of 12 months will appreciably increase the likelihood of fraudulent claims.[8]

Accordingly, we conclude that the one-year period for establishing paternity denies illegitimate children in Texas the equal protection of law.[9] The judgment of the Texas

---

(Vernon 1982), the running of that period is tolled during minority. Art. 5535. See also *In re Miller*, 605 S. W. 2d, at 334.

[8] Appellee contends that the one-year limitation of § 13.01 also is justified by the State's "interest in the continuation of the institutions of family and marriage" and the avoidance of any state actions that would "discourage either institution or . . . encourage persons to have children out of wedlock." Brief for Appellee 21. Important as such a state interest might be, we have repeatedly held that "imposing disabilities on the illegitimate child is contrary to the basic concept of our system that burdens should bear some relationship to individual responsibility or wrongdoing." *Weber* v. *Aetna Casualty & Surety Co.*, 406 U. S. 164, 175 (1972). See also *Lalli* v. *Lalli*, 439 U. S., at 265; *Trimble* v. *Gordon*, 430 U. S., at 769–770; *Mathews* v. *Lucas*, 427 U. S., at 505.

[9] The restrictions imposed by States to control problems of proof, like the restriction imposed by Texas in this case, often take the form of statutes of limitation. "Statutes of limitation find their justification in necessity and convenience rather than in logic. . . . They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Chase Securities Corp.* v. *Donaldson*, 325 U. S. 304, 314 (1945). Because such statutes "are by definition arbitrary," *ibid.*, they are best left to legislative determination and control. Normally, therefore, States are free to set periods of limitation without fear of violating some provision of the Constitution. In

Court of Civil Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE, JUSTICE BRENNAN, and JUSTICE BLACKMUN join, and with whom JUSTICE POWELL joins as to Part I, concurring.

Today, this Court holds that a Texas statute prescribing a one-year statute of limitation for paternity suits violates the Equal Protection Clause of the Fourteenth Amendment. Although I agree with the Court's analysis and result, I write separately because I fear that the opinion may be misinterpreted as approving the 4-year statute of limitation now used in Texas. See Tex. Fam. Code Ann. § 13.01 (Supp. 1982).

I

As the Court notes, the response of the Texas Legislature to our opinion in *Gomez* v. *Perez*, 409 U. S. 535 (1973), was "less than generous." *Ante*, at 94. The one-year statute of limitation for paternity suits, enacted following our decision in *Gomez*, severely restricted the opportunity for illegitimate children to obtain financial support from their natural fathers, an opportunity not denied legitimate children. Although the need for proof of paternity distinguishes legitimate from illegitimate children in their claims for child support, the State's asserted justification is neither sufficiently weighty nor substantially related to the limitation to uphold the statute under the Fourteenth Amendment.

The appellee has set forth a number of "state interests" to justify the one-year statute of limitation, but the Court accepts only one of these as permissible—the interest in preventing the prosecution of stale or fraudulent claims. The Court holds today that this interest will justify only those

this case, however, the limitation period enacted by the Texas Legislature has the unusual effect of emasculating a right which the Equal Protection Clause requires the State to provide to illegitimate children.

statutes of limitation that "are sufficiently long to present a real threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims." *Ante*, at 99. The Court elaborates:

"It requires little experience to appreciate the obstacles to such suits that confront unwed mothers during the child's first year. Financial difficulties caused by childbirth expenses or a birth-related loss of income, continuing affection for the child's father, a desire to avoid disapproval of family and community, or the emotional strain and confusion that often attend the birth of an illegitimate child all encumber a mother's filing of a paternity suit within 12 months of birth." *Ante*, at 100.

Certainly, these circumstances demonstrate that the one-year period of limitation once provided by § 13.01 is not sufficiently long to permit either the child or the mother to assert a claim for child support; moreover, there is nothing to indicate that the period is substantially related to the asserted interest in preventing the prosecution of stale or fraudulent claims. However, it is not only birth-related circumstances that compel the conclusion that the statutory distinction in this case between legitimate and illegitimate children is unconstitutional. To begin with, the strength of the asserted state interest is undercut by the countervailing state interest in ensuring that genuine claims for child support are satisfied. The State's interest stems not only from a desire to see that "justice is done," but also from a desire to reduce the number of individuals forced to enter the welfare rolls.[1] By making it difficult for unwed mothers to obtain child support

---

[1] In holding that the general 4-year statute of limitation, which governed paternity suits for children born before enactment of § 13.01, would be tolled during the plaintiff's minority, the Texas Court of Civil Appeals wrote:

"We agree with the Washington Supreme Court which held that '[t]he state has a compelling interest in assuring that the primary obligation for support of illegitimate children falls on both natural parents rather than on

payments from the natural fathers of their illegitimate children, the one-year statute of limitation could only increase the burden on the state welfare system. Thus, while the State surely has an interest in preventing the prosecution of stale and fraudulent claims, at the same time it has a strong interest, peculiar to the State itself, in ensuring that genuine claims for child support are not denied.[2]

It is also significant to the result today that a paternity suit is one of the few Texas causes of action not tolled during the minority of the plaintiff.[3] Of all the difficult proof problems that may arise in civil actions generally, paternity, an issue unique to illegitimate children, is singled out for special treatment. When this observation is coupled with the Texas Legislature's efforts to deny illegitimate children any significant opportunity to prove paternity and thus obtain child

---

the taxpayers of this state.' *State* v. *Wood,* 89 Wash. 2d 97, 569 P. 2d 1148, 1151 (1977)." *Texas Dept. of Human Resources* v. *Delley,* 581 S. W. 2d 519, 522 (1979).

[2] The State's concern about stale and fraudulent claims is substantially alleviated by recent scientific developments in blood testing dramatically reducing the possibility that a defendant will be falsely accused of being the illegitimate child's father. In *Little* v. *Streater,* 452 U. S. 1 (1981), this Court discussed a report by the American Bar Association and the American Medical Association indicating that a series of blood tests could provide over a 90% probability of negating a finding of paternity for erroneously accused men. See Miale, Jennings, Rettberg, Sell, & Krause, Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage, 10 Family L. Q. 247, 258 (1976). The Court concluded that the "effectiveness of the [tests] attests the probative value of blood test evidence in paternity cases." 452 U. S., at 8. See also Terasaki, Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing, 16 J. Family L. 543 (1978).

[3] Most statutes of limitation in Texas are governed by Tex. Rev. Civ. Stat. Ann., Art. 5535 (Vernon 1982), which provides:

"If a person entitled to bring any action mentioned in this subdivision of this title be at the time the cause of action accrues either a minor, a married person under twenty-one years of age, a person imprisoned or a person of unsound mind, the time of such disability shall not be deemed a portion of the time limited for the commencement of the action and such

support, it is fair to question whether the burden placed on illegitimates is designed to advance permissible state interests.

Finally, the practical obstacles to filing suit within one year of birth could as easily exist several years after the birth of the illegitimate child. For example, if, because of the continuing relationship between the natural father and the mother, the father has provided the child with financial support for several years, the mother understandably would be unlikely or even unwilling[4] to jeopardize her relationship with the child's father by filing a paternity suit in order to protect her child's right to financial support at some indeterminate future date. Alternatively, the child may have lived with the father alone or his relatives for a number of

person shall have the same time after the removal of his disability that is allowed to others by the provisions of this title."

See *Simpson* v. *City of Abilene*, 388 S. W. 2d 760 (Tex. Civ. App. 1965) (holding the 2-year statute of limitation for bringing a negligence action tolled during the plaintiff's minority).

In *Texas Dept. of Human Resources* v. *Hernandez*, 595 S. W. 2d 189, 192 (Tex. Civ. App. 1980), the Texas Court of Civil Appeals expressly held that Tex. Fam. Code Ann. § 13.01 (Supp. 1982) is not tolled on account of the plaintiff's minority on the ground that tolling the statute of limitation "would but constitute a disingenuous way of holding Section 13.01 unconstitutional." Moreover, according to the court, by incorporating the time limitation into the statute creating the substantive right, the "limitation qualifies the right so that it becomes a part of the substantive law rather than the procedural law." 595 S. W. 2d, at 193. Thus, as a matter of state law, the tolling provision in Tex. Rev. Civ. Stat. Ann., Art. 5535 (Vernon 1982) does not apply to § 13.01.

[4] The unwillingness of the mother to file a paternity action on behalf of her child, which could stem from her relationship with the natural father or, as the Court points out, from the emotional strain of having an illegitimate child, or even from the desire to avoid community and family disapproval, may continue years after the child is born. The problem may be exacerbated if, as often happens, the mother herself is a minor. The possibility of this unwillingness to file suit underscores that the mother's and child's interests are not congruent, and illustrates the unreasonableness of the Texas statute of limitation.

years, a situation that leaves the child obviously unable to sue his father to establish paternity. The risk that the child will find himself without financial support from his natural father seems as likely throughout his minority as during the first year of his life.

## II

A review of the factors used in deciding that the one-year statute of limitation cannot withstand an equal protection challenge indicates that longer periods of limitation for paternity suits also may be unconstitutional. In short, there is nothing special about the first year following birth that compels the decision in this case. Because I do not read the Court's decision as prejudging the constitutionality of longer periods of limitation, I join it.

JUSTICE POWELL, concurring in the judgment.

I join Part I of JUSTICE O'CONNOR's concurring opinion, but do not join the Court's opinion. I am concerned, for the reasons persuasively stated by JUSTICE O'CONNOR, that the Court's opinion may be read as prejudging the constitutionality of longer periods of limitation. As she observes, it is significant "that a paternity suit is one of the few Texas causes of action not tolled during the minority of the plaintiff." *Ante,* at 104.