OPINION OF THE COURT
Gertrud Mainzer, J.
In this proceeding brought under article 5 of the Family Court Act petitioner seeks an order of filiation naming respondent as the father of her child, Edwin M. (hereinafter Edwin). Edwin was born on August 31,1978. A verified paternity petition was filed by petitioner on September 24, 1980.
Two applications have been made by the parties. On February 25, 1981 respondent moved to dismiss this proceeding on the ground that the action was not commenced within two years of the child’s birth as required by section 517 of the Family Court Act. On May 22, 1981 petitioner moved for an order requiring respondent to undergo a human leucocyte antigen blood tissue test (hereinafter HLA test) pursuant to section 532 of the Family Court Act.
Both the motion to dismiss and the motion for the HLA test were made while this case was before the Honorable Mortimer Getzels. Although numerous hearings were *470 scheduled each was adjourned and no decision was rendered on either motion. Judge Getzels was then transferred to Family Court, New York County. His calendar, including this matter, was reassigned to me and the case was heard for the first time on July 22, 1981. Thereafter, on October 22, 1981 a conference was held regarding the motions. At that time with counsel’s consent the court directed that both motions be renewed as of October 22, 1981 and that all prior procedural irregularities, regarding the motions, if any, be waived.
The court will address each motion in turn.
respondent’s motion to dismiss
Moving papers dated October 5, 1981 and a memorandum of law dated October 29, 1981 were submitted by respondent in support of his motion to dismiss. Thereafter a hearing was held on December 28,1981, March 26,1982, April 5, 1982 and April 26, 1982.
The bulk of the evidence presented at the hearing concerned the issue of whether or not the two-year limitation period set forth in subdivision (a) of section 517 of the Family Court Act had been tolled by the alleged payments of child support by respondent. Petitioner testified that on seven occasions between January 11, 1979 and April 8, 1980 respondent gave her money for Edwin’s support. Respondent in his testimony denied giving petitioner money for any purpose.
At the hearing petitioner also testified that she originally came to the Probation Department of Family Court to commence a paternity proceeding against respondent in late July or early August of 1980 and that an appointment was made for her by an intake clerk to return to probation on September 24, 1980 with two copies of Edwin’s birth certificate in order to file a petition. She further testified that when she returned on September 24, the necessary papers were drawn and the petition filed.
Petitioner’s testimony on this point was supported, in part, by probation’s file which was subpoenaed and submitted to the court. That record contained a copy of an undated appointment slip indicating that petitioner was to return to probation on September 24, 1980. However, there were *471 no other records available which disclosed the date petitioner first appeared at probation intake to file a petition.
Having considered petitioner’s demeanor at the hearing and her testimony, this court finds it to be a fact that petitioner appeared at probation on a date prior to August 31, 1980 with the intention of commencing a paternity proceeding against respondent and that had the petition been filed at the time petitioner attempted to do so it would have been timely.
With some exceptions not relevant here subdivision (a) of section 517 of the Family Court Act provides that a paternity proceeding shall not be brought more than two years after the birth of the child. Section 523 of the Family Court Act furthermore provides that a paternity proceeding is commenced by the filing of a verified petition. However, in order to commence a paternity proceeding in Family Court, a petitioner, who is not represented by counsel, is required to engage the services of probation to prepare a petition suitable for filing in the court. At probation the matter is initially screened. The petitioner confers with an intake officer and is advised, inter alia, of the requirements involved in filing a petition. Usually, and as was the case here, the petitioner is given an appointment to return to probation with certain necessary documents. It is at that later time that a history of the case is taken by a probation officer and the petition is drawn and filed.
In this case, petitioner appeared at probation before the Statute of Limitations had expired and left without filing an otherwise timely petition upon the instructions of an intake officer. Petitioner, without the advice of counsel, reasonably relied on these instructions and returned to file the petition on the appointed date, three weeks after the Statute of Limitations had run. Thus, the failure to file the petition herein prior to the expiration of the limitation period was not due to any neglect or omission on the part of petitioner but to the inadequacy of the procedure used by probation to process this petition.
Under these circumstances it would be fundamentally unfair to deny petitioner access to the court because she relied on the instructions issued by probation. More impor *472 tantly, the effect of such a denial would be to deprive petitioner’s child, the real party in interest here, of an adequate opportunity to establish his right to support from his alleged father.
Recently, the United States Supreme Court struck down as unconstitutional a one-year limitation period for paternity proceedings which, if enforced, would have deprived the petitioner of an adequate opportunity to seek support from the alleged father of her illegitimate child. (Mills v Habluetzel, 456 US 91.) Specifically, in Mills the Supreme Court stated (456 US, at p 100) that “[b]y granting illegitimate children only one year in which to establish paternity, Texas has failed to provide them with an adequate opportunity to obtain support.”*
Although the question here is not the sufficiency of the Statute of Limitations period, the underlying principle of whether or not the petitioner was afforded an adequate opportunity to establish paternity and seek support is identical. As in Mills, the petitioner herein was not provided with a sufficient opportunity to bring a paternity proceeding on behalf of her child. Petitioner’s attempt to file a petition prior to August 31, 1980 was frustrated by the inadequacy of the procedure made available to her by the State. This court cannot allow that inadequacy to bar petitioner and her child from seeking financial support from the child’s alleged father.
Accordingly, guided by the principles set forth in Mills as well as the best interests of the child, the court holds that the petition filed on September 24, 1980 must be deemed to relate back to that date prior to August 31,1980 when petitioner first appeared at probation to commence the proceeding. Having so held, the issue of whether or not the alleged support payments tolled the Statute of Limitations is moot and the court makes no findings with regard to that matter.
*473 petitioner’s motion for an hla test
On December 18, 1980 regular blood-grouping tests (red blood cell antigen tests) were performed on the parties pursuant to section 532 of the Family Court Act. The results of those tests (dated Dec. 29, 1980) indicated that the respondent could not be excluded as being the father of Edwin.
As stated above, petitioner has now moved for an order directing respondent to submit to an HLA test. Respondent has opposed said motion. In his opposing papers dated October 5, 1981 respondent essentially contends that the court should deny petitioner’s motion because the results of an HLA test are exclusionary only and cannot be admitted in evidence as proof of paternity.
Respondent’s argument is without merit. On March 2, 1981 the New York State Legislature amended section 532 of the Family Court Act to allow the results of an HLA test to be admitted as probative evidence in paternity proceedings. Insofar as it is relevant section 532 now provides as follows: “The court shall advise the parties of their right to a blood test and, on motion of any party, shall order the mother, her child and the alleged father to submit to one or more blood grouping tests * * * the results of the human leucocyte antigen blood tissue test may be received in evidence to aid in the determination of whether the alleged father is or is not the father except in cases where exclusion has already been established by other blood grouping tests”. On March 30,1982 the Legislature further amended section 532 of the Family Court Act to allow into evidence reports of the HLA test results based upon a proper certification of the report alone.
The provisions of section 532 are clear. The HLA test is available as a matter of right to both parties and the results of the HLA test are admissible as evidence of the probability of paternity. Moreover, the HLA amendments set forth above are applicable to paternity proceedings which were pending, as was the proceeding herein, when the amendments became effective. (Matter of Jane L. v Rodney B., 108 Misc 2d 709.)
Based on the foregoing petitioner’s motion is granted. Accordingly, this matter is adjourned to November 9,1982 *474 at 9:30 a.m. in Part 5 for the purpose of scheduling the HLA test. Both parties are directed to appear at that time and to make an appointment for the blood test through the court’s CAP unit. Petitioner is further directed, pursuant to her prior stipulation to pay the costs of said test.

 In Mills v Habluetzel (456 US 91), the Supreme Court did not determine whether a four-year limitation period for paternity claims, effective in Texas as of Sept. 1, 1981, would be constitutionally sufficient. (But see Justice O’Connor’s concurring opinion in Mills v Habluetzel, supra, p 106, implying that even a four-year limitation period for paternity proceedings would be constitutionally inadequate.) However, the Supreme Court found that the limitation period established by a State must take into account the various obstacles that encumber the filing of paternity proceedings by unwed mothers after the birth of an illegitimate child.