In the Matter of STATE of Minnesota, COUNTY OF DOUGLAS, ex rel. Mary Emma WARD, parent, on behalf of J.M.K., Respondent,

v.

Robert Joseph CARLSON, Appellant.

No. C9–86–1368.

Supreme Court of Minnesota.

July 17, 1987.

Charles A. Krekelberg, John A. Hatling, Pelican Rapids, for appellant.

Ann L. Carrott, Asst. Douglas Co. Atty., Alexandria, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Peggy L. Bunch, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae.

## OPINION

COYNE, Justice.

This is an action for support of a now 15–year-old child brought by Douglas County more than three years after the child first received public assistance. The defendant is the putative father—not the presumed father—of the child, whose mother was married to a man other than defendant at the time of the child's birth. Contending that the action was barred by the three-year limitation set by Minn.Stat. § 257.57, subd. 1(b) (1986), defendant moved for summary judgment. The district court denied the motion on the ground that Minn.Stat. § 257.57 (1986) denies to "a class of illegitimate children" the equal protection of the laws and certified the question of the constitutionality of the statute as important and doubtful. In the absence of any specific question, we have framed the certified question thus:

> Does Minn.Stat. § 257.57 deny to a class of children the equal protection of the laws by limiting to three years after a child's birth the time for bringing an action for the purpose of declaring the nonexistence of the father and child relationship presumed under Minn.Stat. § 257.55, subd. 1, clause (a), (b), or (c)?

and we answer that question, no.

The district court prefaced the memorandum appended to the order denying summary judgment with these facts:

> At the time J.M.K. was born on October 28, 1971, his mother, Mary Emma Ward, was married to Juan Gomez, Sr. Although it is alleged that Ward and Gomez had separated in December of 1967, they were

not formally divorced until November 28, 1972, a little more than a year after J.M.K.'s birth. Ward first received AFDC payments for J.M.K.'s benefit on August 1, 1981. On May 9, 1985, Douglas County commenced this action alleging that defendant Carlson is the father of J.M.K. and seeking reimbursement for past support provided by the county and the imposition of an ongoing support obligation.

Minnesota's Parentage Act, Minn.Stat. §§ 257.51 to 257.74, adopted in 1980, establishes a comprehensive system for the recognition and determination of the existence of the parent and child relationship. The first section of the Parentage Act defines "parent and child relationship":

> As used in sections 257.51 to 257.74, "parent and child relationship" means the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. It includes the mother and child relationship and the father and child relationship.

Minn.Stat. § 257.52 (1986). Noticeably absent from the Parentage Act are such archaic terms as "legitimate" and "illegitimate."[1] Indeed, the Act specifically provides that "the 'parent and child relationship' may exist regardless of the marital status of the parents," Minn.Stat. § 257.53 (1986), and sets out how the parent and child relationship between the child and the natural mother or natural father or an adoptive parent may be established. Minn. Stat. § 257.54 (1986). The Minnesota Parentage Act appears to us to reflect a studied legislative effort to eliminate the vestigal remnants of social stigma once visited on children born out of wedlock, an effort which warrants the removal of the term "illegitimate child" from the judicial vocabulary.

In aid of the recognition of the father and child relationship, the Act sets up certain presumptions of paternity. The district court's stated facts implicate the presumption found at Minn.Stat. § 257.55, subd. 1(a) (1986):

> A man is presumed to be the natural father of a child if:
>
> (a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 280 days after the marriage is terminated by death, annulment, declaration of invalidity, dissolution, or divorce, or after a decree of legal separation is entered by a court.[2]

---

**1.** Contemporaneous with enactment of the Uniform Parentage Act, the legislature eliminated statutory references to illegitimacy. For example, 1980 Minn.Laws ch. 589 § 38 repealed Minn.Stat. § 517.19 (1978) which had provided that, "Illegitimate children shall become legitimized by the subsequent marriage of their parents to each other, and the issue of marriages declared null and void shall nevertheless be considered legitimate." That enactment also eliminated other references to illegitimacy. 1980 Minn.Laws ch. 589, §§ 25–27, 30–37. *See also* 1980 Minn.Laws ch. 589 § 38 (repealing, *inter alia*, Minn.Stat. §§ 257.261, 257.262, 257.-27, 257.29, 257.31 (1978)).

**2.** Other presumptions of paternity are declared in clauses (b) through (e) of subdivision 1 of section 257.55:

> A man is presumed to be the natural father of a child if:
> (a) * * *
> (b) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared void, voidable, or otherwise invalid, and,

(1) if the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 280 days after its termination by death, annulment, declaration of invalidity, dissolution or divorce; or
(2) if the attempted marriage is invalid without a court order, the child is born within 280 days after the termination of cohabitation;
(c) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared void, voidable, or otherwise invalid, and
(1) he has acknowledged his paternity of the child in writing filed with the state registrar of vital statistics;
(2) with his consent, he is named as the child's father on the child's birth certificate; or
(3) he is obligated to support the child under a written voluntary promise or by court order;
(d) While the child is under the age of majority, he receives the child into his home and

When there is a statutory presumption of fatherhood because of marriage or an attempted marriage [Minn.Stat. § 257.55, subd. 1(b) and (c) (1986)], the determination of the father and child relationship is governed by Minn.Stat. § 257.57, subd. 1 (1986):

Subdivision 1. A child, the child's natural mother, or a man presumed to be the child's father under section 257.55, subdivision 1, clause (a), (b), or (c) may bring an action:

(a) At any time for the purpose of declaring the existence of the father and child relationship presumed under section 257.55, subdivision 1, clause (a), (b), or (c); or

(b) For the purpose of declaring the nonexistence of the father and child relationship presumed under section 257.55, subdivision 1, clause (a), (b), or (c) only if the action is brought within a reasonable time after the person bringing the action has obtained knowledge of relevant facts, but in no event later than three years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.

When a child has no presumed father, an action to determine paternity may be brought pursuant to Minn.Stat. § 257.57, subd. 3 (1986):

An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 257.55 may be brought by the child, the mother or personal representative of the child, the public authority chargeable by law with the support of the child, the personal representative or a parent of the mother if the mother has died or is a minor, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor.

Only then may the public authority chargeable with the support of the child bring the action to determine the existence of the father and child relationship.

Inasmuch as an action to declare the existence of the father and child relationship presumed under section 257.55, subd. 1, clause (a), (b), or (c) may be brought at any time and an action to determine the paternity of a child who has no presumed father can be brought at any time until one year after the child has attained the age of majority, we fail to see any basis for an equal protection challenge. The classification of children based on a presumption of paternity certainly has a rational basis, and a 19–year statute of limitations can hardly be equated with the one and two year limitation provisions which the United States Supreme Court rejected in *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982) and *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983).

Moreover, the equal protection ground on which the *Mills* and *Pickett* decisions rested was the precipitous deprivation of the judicially enforceable right of children to support from their natural father by one and two year statutes of limitations for suits to identify the natural fathers of illegitimate children (in Minnesota they would be children without presumed fathers). While the Minnesota Act imposes a three year limitation on actions to determine the nonexistence of a father and child relationship presumed under section 257.55, subd. 1, clause (a), (b), or (c), the child is not thereby disadvantaged with respect to his or her right of support. Any action for support, whether asserted by the custodial parent, Minn.Stat. § 256.87, subd. 4 (1986), or by the state or county agency which has furnished AFDC, Minn.Stat. § 256.87, subd. 1 (1986), lies against the presumed

openly holds out the child as his natural child; or

(e) He and the child's natural mother acknowledge his paternity of the child in a writing signed by both of them under section 257.34 and filed with the state registrar of

vital statistics. If another man is presumed under this clause to be the child's father, acknowledgment may be effected only with the written consent of the presumed father or after the presumption has been rebutted.

father. If a declaration of the existence of the father and child relationship presumed under section 257.55, subd. 1, clause (a), (b), or (c), is considered prerequisite to the imposition of the support obligation, the time for bringing that action is unlimited.[3] Minn.Stat. § 257.57, subd. 1(a) (1986).

The ultimate goal of an action pursuant to section 257.57, subd. 1(a) is, of course, the identification of the child's natural father. Even if the right to bring an action for a declaration of the nonexistence of the father and child relationship presumed under section 257.55, subd. 1, clause (a), (b), or (c) has been foreclosed by the lapse of time, nothing in the Parentage Act either precludes a presumed father from denying paternity or obstructs the disclosure of the true facts of parentage. The presumption may be rebutted only by clear and convincing evidence, Minn.Stat. § 257.55, subd. 2 (1986), but once the presumption has been rebutted, an action may be maintained, in appropriate circumstances, to determine the existence of the father and child relationship with respect to a child who has no presumed father. Minn.Stat. § 257.57, subd. 3.

On the district court's stated facts Juan Gomez, Sr. is J.M.K.'s presumed father. It is quite possible, however, that no such presumption arises under section 257.55, subd. 1, for the Gomez/Ward marriage appears to have been annulled. There are indications in the district court file that Gomez was already married and that his earlier marriage had not been dissolved at the time of his attempted marriage to Ward. Such an attempted marriage would, of course, be absolutely void pursuant to Minn.Stat. § 518.01 (1986). If it should be found, as it is alleged, that Gomez and Ward ceased cohabitation more than 280 days before J.M.K.'s birth, Gomez would not be presumed to be J.M.K.'s father under section 257.55, subd. 1(b), and the action against Carlson could be maintained

by or on J.M.K.'s behalf under section 257.57, subd. 3. That the section 257.57, subd. 3, action would obviate the constitutional issue posed by the certified question—even though the county's action would be subject to the limitation then provided by section 257.58—emphasizes the very limited utility of certified questions, which are usually presented in the abstract without adequate factual background.

Certified question answered.

---

3. The present action has been brought on the relation of Mary Emma Ward on her own behalf and on behalf of her minor child. We call attention to the provisions of Minn.Stat. § 257.-60 (1986), which provides that although a minor child may be made a party to the action, the court must appoint a general guardian or a guardian ad litem to represent the child in the proceedings. "The child's mother or father may not represent the child as guardian or otherwise."