916 F.2d 261
 59 USLW 2313
 The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,
v.
William Edward MOORHEAD and Alice Ethyl Shnieble Moorhead,
Defendants-Appellees,
v.
The Minor, Billie-Joe Piedra MOORHEAD, Defendant-Appellant,
v.
UNITED STATES of America, Intervenor-Appellee.
 No. 90-3088.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 2, 1990.
 
 David E. Stanley, Stanley & Harrison, Baton Rouge, La., for defendant-appellant.
 David R. Kelly, Breazeale, Sachse & Wilson, Baton Rouge, La., for Prudential.
 David W. Robinson, Baton Rouge, La., for the Moorheads.
 John C. Harrison, Douglas N. Letter, U.S. Dept. of Justice, Washington, D.C., for U.S. intervenor.
 Appeal from the United States District Court for the Middle District of Louisiana.
 Before GEE, RUBIN, and DAVIS, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 Today we decide whether, consistent with the equal protection clause, Congress, in designating the order of eligible beneficiaries of military personnel life insurance--absent such a designation by the insured--may limit the class which includes illegitimate children so that only those illegitimate children who take appropriate action during the insured father's lifetime can be eligible beneficiaries. We conclude that the statutory classification scheme established by Congress is substantially related to important governmental interests and therefore affirm.
 
 Facts and Procedural History
 
 2
 Congress established the Servicemen's Group Life Insurance Act, 38 U.S.C. Sec. 765 et seq., ("SEGLI"), to make group life insurance available to current and former members of the armed forces. Private insurance companies provide the insurance through a policy issued to the United States, and the policy names as insureds each participating service member. See 38 U.S.C. Secs. 766, 767. The federal government contributes a portion of the premium expense for the policy, shouldering the increased costs traceable to the additional risks associated with insuring military personnel.
 
 
 3
 When an insured service member dies, SEGLI requires that the private insurer pay the proceeds "to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death." 38 U.S.C. Sec. 770(a). If the insured fails to designate a beneficiary before his death, SEGLI provides the order of precedence of beneficiaries as: (1) the insured's spouse, (2) the insured's children or descendants, (3) the insured's parents, (4) the executor of the insured's estate, or (5) the next of kin under the law of the state in which the insured was domiciled at the time of his death.
 
 
 4
 SEGLI further defines the "children" classification to include legitimate children, lawfully adopted children, illegitimate children as to their mother, and illegitimate children as to their alleged father if they fulfill one of several alternatives. A child illegitimate as to his father is a potential beneficiary if: (1) the putative father acknowledged the child in a writing signed by him; (2) he has been judicially ordered to contribute to the child's support; (3) he has been, before his death, judicially decreed to be the father of the child; (4) proof of paternity is established by a certified copy of a public record of birth or church record of baptism and the record shows that the insured was the informant and was named the father of the child; or (5) proof of paternity is established from service department or other public records, such as child or welfare agencies, which show that with his knowledge the insured was named as the father of the child. 38 U.S.C. Sec. 765(8).
 
 
 5
 On July 26, 1985, Jo Ann Piedra informed the decedent, William E. Moorhead, Jr., an active-duty member of the United States Navy, that she was pregnant with his child. Eleven days later Mr. Moorhead died from injuries he sustained in a motorcycle accident. Approximately seven months after Mr. Moorhead's death, Ms. Piedra gave birth to a daughter, Billie-Joe Piedra Moorhead, the appellant herein.
 
 
 6
 At the time of his death, the Prudential Insurance Company of America insured Mr. Moorhead's life in the amount of $35,000 under a Servicemen's Group Life Insurance Policy. Mr. Moorhead left no surviving spouse, no legitimate children, and did not designate a beneficiary before his death. As a result, the insurance proceeds are to be paid according to the order of precedence set forth in SEGLI. Pursuant to SEGLI, the insurance proceeds will be distributed to Mr. Moorhead's parents unless one or more individuals qualify as his children.
 
 
 7
 The Family Court for Duchess County, New York, granted an order of affiliation adjudicating Mr. Moorhead as Billie-Joe Piedra Moorhead's father. Pursuant to the court order, the state of New York issued a certificate listing him as her father. The named defendants in the action were Mr. Moorhead's parents, William and Alice Moorhead, but they did not appear at the hearing.
 
 
 8
 Whatever the legal effect of the New York order of affiliation, the appellant concedes that it does not make her an eligible beneficiary under the SEGLI guidelines for illegitimate offspring because New York issued the birth certificate after Mr. Moorhead's death and without his knowledge or consent.[1] Specifically, Mr. Moorhead never acknowledged the appellant in a signed writing, he was never ordered to contribute to her support, he was not judicially decreed to be her father before his death, he was not the informant on a birth or baptismal record, and there are no public records indicating that he knew that he had been named as Moorhead's father. Appellant nevertheless asserts that she is entitled to recover the life insurance proceeds as Mr. Moorhead's daughter and that the obstacles posed by SEGLI deprive her of due process and equal protection of the law guaranteed by the fifth amendment.
 
 
 9
 Uncertain as to the proper distribution of the proceeds, Prudential filed an interpleader action naming Mr. Moorhead's parents and Billie-Joe Piedra Moorhead as defendants. The complaint was later amended to include Jessyca Lee Wood.[2] Prudential identified the potential claimants to the insurance proceeds and requested that the district court permit them to litigate their claims and grant Prudential an injunction against any claim inconsistent with the court's ultimate disposition.
 
 
 10
 The district court held that the SEGLI provisions comport with the due process clause because they are substantially related to furthering the governmental interests in accurately determining paternity and in efficiently distributing insurance funds. As a result, the court granted summary judgment in favor of Mr. Moorhead's parents and directed that the proceeds be paid to them. 730 F.Supp. 731. We agree with the district court's conclusion and therefore affirm.
 
 Standard of Review
 
 11
 It is well settled constitutional law that statutory classifications based on illegitimacy are subject to intermediate or heightened scrutiny. Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988). Intermediate scrutiny occupies a position between that of minimum scrutiny--which requires that a statutory classification bear a rational relationship to a legitimate governmental interest--and strict scrutiny--which requires that the classification be narrowly tailored to achieve a compelling state interest. It means that a particular classification--today that of the beneficiary designations for illegitimate children in SEGLI--must be "substantially related to an important governmental objective." Jeter, 486 U.S. 456 at 461, 108 S.Ct. 1910 at 1914.
 
 
 12
 This intermediate level of scrutiny reflects a concern that additional strictures imposed on the entitlements of illegitimate children have some constitutionally impermissible discriminatory purpose as their impetus. It is a response to the fear that legal hardship may be visited upon illegitimate children merely because of "society's condemnation of irresponsible liaisons beyond the bonds of marriage." Weber v. Aetna Casualty and Surety Co., 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768 (1972). Intermediate scrutiny is an examination intended to insure that the relationship between the statutory means and ends is substantial; it becomes the government's burden to prove that a statute classifying illegitimate children is not capricious in its classification, but is a measured response to a legitimate governmental concern.
 
 
 13
 Intermediate scrutiny has never meant, however, that the government is altogether forbidden from developing a statutory scheme which serves its legitimate concerns, even should the scheme unavoidably impose hardship on a particular individual subject to it. With regard to illegitimate children, the Supreme Court has explained: "[I]n the seminal case concerning the child's right to support, this Court acknowledged that it might be appropriate to treat illegitimate children differently in the support context because of 'lurking problems with respect to proof of paternity.' " Jeter, 486 U.S. 456 at 461, 108 S.Ct. 1910 at 1914 (quoting Gomez v. Perez, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973)).
 
 
 14
 It is within this framework that we must examine the interests advanced by the government in establishing the SEGLI classifications. The government maintains that the SEGLI scheme serves three substantial interests: it provides (1) reliable determinations of paternity; (2) quick and efficient administration of the insurance proceeds; and (3) a pattern of distribution which parallels the insured's own wishes, could they be discovered.[3]
 
 The Need for Reliability
 
 15
 The problems associated with proving paternity are well known; the proof relied on is "often sketchy and strongly contested, frequently turning upon conflicting testimony from only two witnesses." Mills v. Habluetzel, 456 U.S. 91, 97, 102 S.Ct. 1549, 1554, 71 L.Ed.2d 770 (1982). Accuracy in determining paternity is recognized as an important governmental interest--and the government is justified in classifying illegitimate children differently from legitimate children to ensure a greater degree of accuracy in paternity actions. See Gomez, 409 U.S. 535 at 538, 93 S.Ct. 872 at 875; Lalli v. Lalli, 439 U.S. 259, 269, 99 S.Ct. 518, 525, 58 L.Ed.2d 503 (1978). Fortunately, the advent of DNA testing has alleviated many of the serious problems of proof inherent in paternity adjudications. See Jeter, 486 U.S. 456 at 465, 108 S.Ct. 1910 at 1916; Mills, 456 U.S. 91 at 98 n. 4, 102 S.Ct. 1549 at 1554 n. 4.
 
 
 16
 The marvels of DNA testing, though leading us closer to eliminating paternity swearing matches, only solve the problem if the putative father can be tested. Thus, the need for a determination of paternity during the alleged father's lifetime is as relevant today as it was when Justice Powell explained its importance in Lalli:
 
 
 17
 "Accuracy is enhanced by placing paternity disputes in a judicial forum during the lifetime of the father ... The availability of the putative father should be a substantial factor contributing to the reliability of the fact-finding process ... In addition, requiring that the order be issued during the father's lifetime permits a man to defend his reputation against unjust accusations in paternity claims ... Fraudulent assertions of paternity will be much less likely to succeed, or even to arise, where the proof is put before a court of law at a time when the putative father is available to respond, rather than first brought to light when the distribution of assets of an estate is in the offing."
 
 
 18
 Lalli, 439 U.S. 259 at 271-72, 99 S.Ct. 518 at 526 (plurality opinion).
 
 
 19
 The government also maintains that SEGLI secures an efficient distribution of the insurance proceeds. The Supreme Court has recognized that the orderly and efficient administration of a deceased's estate is an important governmental interest: "The administration of an estate will be facilitated, and the possibility of delay and uncertainty minimized, where the entitlement of an illegitimate child to notice and participation is a matter of judicial record before the administration commences."[4]
 
 
 20
 We conclude that Lalli and the cases following it demonstrate that both accuracy and efficient estate administration are important government interests. The primary government interest here, however, is accuracy.[5] The language in SEGLI demonstrates both a concern for accurately establishing paternity and an acknowledgement that such a concern should not prevent an illegitimate child from receiving insurance benefits if paternity is established during the father's lifetime. Congress provides no fewer than five distinct ways paternity can be established--one of them as simple as a written statement of paternity signed by the alleged father. Each method, however, has in common some reliable indicator of paternity--either the results of a contested adjudication or the father's voluntary acknowledgement of his paternity.
 
 
 21
 It is no accident that each of the five SEGLI classes involve events that must occur while the insured father is alive. In so doing, Congress is promoting the interest in accuracy that the Supreme Court recognized in Lalli. The appellant contends that only one of the five methods established by SEGLI--that of a writing signed by her father--was available to her as a posthumously born illegitimate child. In truth, a mother in Louisiana--the state in which a support or paternity action would properly have been filed--can assert the rights of her unborn child.[6] We recognize that in practice these additional options may have been foreclosed to the appellant. See Mills, 456 U.S. 91 at 100, 102 S.Ct. 1549 at 1555 (describing the difficult obstacles unwed mothers confront in establishing paternity). Congress, however, is not charged with making every option available to every illegitimate child--the fit between statutory purpose and statutory rule need not be perfect. As Justice Powell explained in Lalli, "few statutory classifications are entirely free from the criticism that they sometimes produce inequitable results." Lalli, 439 U.S. 259 at 273, 99 S.Ct. 518 at 527.
 
 
 22
 Rather, the question we must decide in an intermediate scrutiny case is whether the alternative chosen by Congress denies equal protection of the laws--without a view as to any alternative we might have chosen had we been the primary decision-maker. Rostker, 453 U.S. 57 at 70, 101 S.Ct. 2646 at 2654, 69 L.Ed.2d 478 (1981). Congress chose an alternative that introduces reliability into paternity disputes by creating an opportunity for the alleged father to acknowledge or contest his paternity. Accuracy in paternity determinations is an important government interest. We therefore conclude that SEGLI is substantially related to an important government interest, meets the test of intermediate scrutiny and does not violate the equal protection clause.
 
 The Due Process Challenge
 
 23
 The Appellant also maintains that SEGLI violates the due process clause because SEGLI denies her the opportunity to assert a claim to the insurance proceeds. She misunderstands, however, the nature of a procedural due process challenge. The SEGLI provisions governing insurance payments to illegitimate children are rules of substance, not procedure--and nothing in SEGLI prevents an illegitimate child who is within one of the beneficiary classes from bringing an action to receive the proceeds. The legal question for the appellant here is whether the SEGLI classes themselves are constitutional--not whether she is prevented from asserting a claim should she fall within one of them.
 
 
 24
 Justice Scalia drew a similar distinction in a substantive due process case, where he distinguished a substantive bar to a litigant's claim from a procedural one. He first agreed that applying the disputed legal presumption to the claim at issue would not "further the lawful governmental policy the presumption is designed to effectuate." Michael H. v. Gerald D., --- U.S. ----, 109 S.Ct. 2333, 2340, 105 L.Ed.2d 91 (1989) (plurality opinion). He denied, however, that the challenge to the presumption was procedural--"the same can be said of any legal rule that establishes general classifications, whether framed in terms of a presumption or not." Id. As in that case, here we must question "not the adequacy of the procedures but ... the adequacy of the 'fit' between the classification and the policy that the classification serves." Id. Appellant's procedural due process challenge is therefore inappropriate.
 
 Conclusion
 
 25
 We are sympathetic to the unfortuitous events leading to appellant's challenge. Our sympathy, however, must not tempt us to alter or discard a Congressional statute purposefully designed to meet important governmental interests. To do so risks compromising those interests and imposing greater inequities than any borne under the existing statute. We conclude that SEGLI does not violate the equal protection clause and therefore we affirm.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The government maintains that the New York court order is invalid. We do not address the validity of the order, however, because its effect does not bear on the outcome of today's proceedings
 
 
 [2]
 Jessyca Lee Wood was born on May 8, 1982. At that time her mother, Jan D. Wood was married to Philip R. Wood. Although Mr. Moorhead was never judicially decreed to be her father, Prudential added Jessyca as a defendant apparently because she too alleged that Mr. Moorhead was her biological father. She did not, however, file a notice of appeal
 
 
 [3]
 The government contends that we must accord these interests greater deference because SEGLI is a military life insurance policy. See Rostker v. Goldberg, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (according greater deference to governmental interest in military matters and rejecting an equal protection challenge to gender classifications in military draft registration). We do not reach this contention, however, because here we find the interests asserted by the government to be substantial
 
 
 [4]
 Lalli, 439 U.S. 259 at 271, 99 S.Ct. at 518 at 526. We note that the need for a quick and efficient distribution of a decedent's estate or disbursement of insurance proceeds implicates a more compelling governmental interest than that involved in the speedy resolution of a suit against other claimants for property or against a tortfeasor. To require that all disbursements be withheld for several years on the chance that a claim from an afterborn illegitimate might be forthcoming would be impractical. This case can therefore be distinguished from those in which the Supreme Court held the imposition of an arbitrary statute of limitations on child support actions to be unconstitutional. See Jeter, 486 U.S. 456 at 464, 108 S.Ct. 1910 at 1915; Mills, 456 U.S. 91 at 100-01, 102 S.Ct. 1549 at 1555
 
 
 [5]
 The Senate Report for SEGLI explains that "[t]he bill adopts the most widely accepted criteria established by State law and the judicial precedents for establishing that an illegitimate child is the child of his alleged father." S.Rep. No. 545, 92 Cong., 1st Sess. 2 (1971), U.S.Code Cong. & Admin.News 1971, pp. 2127, 2128
 Other than accuracy and efficiency, the government asserts that SEGLI reflects the decedent's undisclosed wishes--that the SEGLI pattern would be the one chosen by a majority of military service personnel that fail to designate beneficiaries. We do not address the merit of this assertion because we are persuaded that SEGLI is substantially related to the primary interests of accuracy and efficiency--we do not explore other possible purposes for establishing the beneficiary classes.
 
 
 [6]
 The parties agree that Louisiana substantive law governs the issue as to whether an unborn child can assert property rights. Louisiana law considers an unborn child to be a natural person from the moment of conception for whatever relates to its interest. La.Civ.Code Art. 26. Further, Louisiana case law establishes an unborn child's standing to assert property rights. See Malek v. Yekani-Fard, 422 So.2d 1151 (La.1982)